STATE OF MISSOURI, Appellant, *v.* JOSEPH PULITZER, Respondent.

March 21, 1882.

1. In an information charging criminal libel, if the name of the person claimed to have been libelled does not appear in the publication, such extrinsic facts as make it certain to whom the libellous words were intended to apply, must be distinctly alleged.

2. In such an information the application of the libellous words cannot be fixed by *inuendo* or by an allegation of other publications made at other times and which form no part of the publication complained of.

APPEAL from the St. Louis Court of Criminal Correction, CADY, J.

*Affirmed.*

FRANK J. BOWMAN, for the appellant.

DYER, LEE & ELLIS, for the respondent: The publication in this case, charged to be defamatory of F. J. Bowman, does not expressly, or in any other way, name or point out Bowman. In order to make such application, extrinsic facts must have been averred in issuable form by way of inducement. Such facts must be clearly and fairly averred; the words "of and concerning" are not sufficient. —*Clement* v. *Fisher*, 7 Barn. & Cress. 459; Towns. on Libel, 561, sect. 316; *s. c.* 1 Man. & R. 281; Bishop's Cr. Proc. (2d ed.), sects. 784, 785. And an averment of such extrinsic facts in the *inuendo* will not help the information. — *Bundy* v. *Hart*, 46 Mo. 460. An *inuendo* cannot extend the meaning of defamatory matter, unless by reference to matter of inducement. The *inuendo* must be supported by the inducement. — Towns. on Libel (3rd ed.), sect. 337; Bishop's Cr. Proc., sect. 749, and note; *Caldwell* v. *Raymond*, 2 Abb. Pr. 193.

LEWIS, P. J., delivered the opinion of the court.

The defendant was arraigned upon the following information for malicious libel: —

" M. W. Hogan, prosecuting attorney of the St. Louis Court of Criminal Correction, now here in court, on behalf of the state of Missouri, information makes as follows : That Joseph Pulitzer, in the city of St. Louis, on the eleventh day of November, 1881, being a person of wicked and envious mind, and of the most malicious disposition, and maliciously, wickedly, and unlawfully contriving and intending, as much as in him lay, to injure the good name and reputation of affiant, Frank J. Bowman, and to provoke him to wrath, and to expose him to public hatred and contempt, and to deprive him of public confidence and social intercourse, the said Joseph Pulitzer did, in the city aforesaid, at the time aforesaid, of and concerning the said Frank J. Bowman, with full knowledge that the same were false and libellous, maliciously, wickedly, and unlawfully compose and publish, and did cause to be composed and published in a certain newspaper known as the St. Louis *Post-Dispatch*, published in the city of St. Louis and state of Missouri, under the direction and control of said Joseph Pulitzer, the following false and slanderous words, according to the tenor and effect following : —

" ' We were pleased with the appointment of Mr. Kennett, and have tried to think well of him. He is young, he has borne a good name, and has every incentive to follow an honorable career. We are willing to believe now that he has been led into this mistake by others, and that he is not wholly responsible. He has fallen into the hands of a knavish and malignant adviser, who is as unscrupulous as he is ignorant, and as vicious as he is cowardly. The depravity and cunning of this Newgate rat is visible throughout the whole dirty business. The methods are peculiarly his. The sooner the chief of police shakes this slimy creature away from his ear, the better it will be for his fair name. Without good reputation, office, power, emoluments are as nothing, and Mr. Kennett is old enough to be aware of the fact."

" Meaning and intending to be understood, and meaning and intending that it should be understood by divers good citizens, and particularly by the readers of said *Post-Dispatch* newspaper, that the false and libellous words so used, as hereinbefore set forth, were intended to apply to the affiant, the said Frank J. Bowman, who was therein by said Joseph Pulitzer intended to be and was therein falsely charged with being a 'knavish and malignant adviser,' and the said false and slanderous words in said libellous publication, so used and made use of and published by said Joseph Pulitzer, in manner as aforesaid, were by divers and many good citizens of the state of Missouri, and many and divers persons reading the said *Post-Dispatch* newspaper, understood to mean and be applied to, and published of and concerning said Frank J. Bowman, by reason that said Joseph Pulitzer had in said *Post-Dispatch* newspaper, previous to the publication of said slanderous words, as aforesaid, on sundry and divers days between the first day of November, 1881, and the said eleventh day of November, 1881, caused and procured to be published in said *Post-Dispatch* newspaper, that the affiant, the said Frank J. Bowman, was the attorney, adviser, and counsellor of the said Kennett, named and mentioned in the said false and malicious libel aforesaid ; and by the means aforesaid in the manner aforesaid, the said Joseph Pulitzer did maliciously, wickedly, intend to cause, and did cause, many and divers good citizens of the state of Missouri, and particularly many persons reading the said *Post-Dispatch* newspaper, to understand and believe that the slanderous words used and published as aforesaid, in the publication so made as aforesaid, on the eleventh day of November, 1881, were published and used of and concerning the affiant, Frank J. Bowman, of and concerning whom (the said Frank J. Bowman) the said Joseph Pulitzer, in manner as aforesaid, did, at the time and place aforesaid, wickedly, maliciously, and unlawfully publish the slanderous words as aforesaid, well knowing the

same, at the time of the publication, to be false, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state."

The defendant filed a motion to quash the information for insufficiency. This motion was sustained by the court, and the state appealed.

It is objected that the information does not sufficiently show an application of the libellous words to the person complaining. Our statute has modified the common-law rule on this subject, in its application to civil suits. Rev. Stats., sect. 3552. But in criminal prosecutions, the common law remains unchanged.

If the complainant be mentioned by name in the libellous publication, nothing further is necessary to identify him as the person against whom the allegations are directed. But if the name be not given, such extrinsic facts as will serve to show who is the person affected by the publication, and so intended to be by the libeller, and so understood to be by the readers of the libel, must be distinctly and positively averred. It will not do to state merely the evidence of such facts. The facts themselves must appear. Nor is it sufficient to bring the complainant within the description by means of an *inuendo.* Thus, where the words were : " Go tell my landlord [*inuendo* the plaintiff] he is a thief," judgment was given against the plaintiff for not having averred that he was the landlord of the defendant, although he had averred that the words were spoken of himself. *Spencer* v. *Medburne,* 3 Cro. 420. In an action on the case, the words complained of were : " Your father [meaning the plaintiff] hath struck and killed Nicholas Russell." There was a verdict for the plaintiff, but judgment was arrested, because it was not averred in the declaration that the plaintiff was father of him to whom the words were spoken. 1 Vin. Abr. 528. In *Shalmer* v. *Foster* (3 Cro. 176), the words were : " Where is that lying thief, thy son ? " *inuendo* the plaintiff. The final judgment is not reported, but the judges

appear to have been of opinion — two doubting, but not dissenting — that the words were uncertain of whom they were spoken, " no precedent communication being alleged to be of the plaintiff, nor that he was the only son of the said 'Ann Rochester, to whom the words were spoken; and it may be that she had divers sons, and every one of them might have' an action, as well as the plaintiff." See also *Badcock* v. *Atkins*, 1 Cro. 416. The like ruling prevailed in *Phelps* v. *Lane* (3 Cro. 92), although in that case, as in *Spencer* v. *Medburne* (*supra*), it was averred in *colloquium*, that the words were spoken of the plaintiff. In all these, and in numerous other cases, it is held that the *inuendo* cannot help such an insufficient averment, even after verdict. 1 Stark. Slander, 385.

In the publication here complained of, the name of the prosecutor is not mentioned. The only attempt to fix the application of the libel appears in the allegation that the defendant had, at divers times prior to the objectionable publication, caused and procured to be published in the same newspaper, " that the affiant, the said Frank J. Bowman, was the attorney, adviser, and counsellor of the said Kennett," etc. This is not an averment of the material fact, but only of the evidence by which it is proposed to prove the fact, to wit, by the defendant's admission *aliunde* the libel. It undertakes to piece out the libel, by introducing other publications forming no part of it, and made at other times and in other issues of the paper. It does not show that the persons who read the alleged libel were aided in their understanding of its application by the previous publications, because it is not averred that the same persons, or any of them, who read the libel, had also read the publications before it. The introduction of these previous statements strongly resembles an attempt to make the defendant supply the missing links in the plaintiff's chain of accusatory facts, by testifying against himself. As the information is framed, the essential fact to show the applica-

tion of the alleged libel to the complainant is that he was in fact the adviser of the person mentioned, or, at least, that he was actually known and understood so to be at the time of the publication. Neither of these propositions is stated, except in an inferential way which is inadmissible under any code of pleading.

The judgment is affirmed, with the concurrence of all the judges.