State v. Powell.

STATE OF MISSOURI, Respondent, v. WALBRIDGE J. POWELL, Appellant.

St. Louis Court of Appeals, May 12, 1896.

1. **Criminal Libel:** AMENDMENT OF INFORMATION. Amendments of an information for criminal libel, which are based upon the publication originally set forth in the information, and have reference solely to innuendoes and colloquia, do not charge a new or additional offense.

2. ———: ———: NUMBER OF AMENDMENTS. The amendments permissible with respect to such an information are not limited to any specific number.

3. ———: LANGUAGE CONSTITUTING LIBEL. It is libelous to charge a person with the procurement of false affidavits for the purpose of preventing the appointment of an applicant to a position of trust and profit; and there is no difference in this respect between criminal and civil libel.

State v. Powell.

4. ———: INNUENDOES AND COLLOQUIA. Innuendoes and colloquia in an information are sufficient, if the inference which they seek to raise is at all admissible.

5. ———: READING OF STATUTE TO JURY. The reading to the jury of the statute on which an information is based is not error; especially is this true in a case of criminal libel, since the jury are the judges of both the law and the facts therein.

6. ———: FUNCTION OF JURY. In cases of criminal libel the jury are, under our constitution, the judges of the law and the facts, and are, therefore, at liberty to disregard the instructions of the court. Accordingly, it is error for the court in such a case to first instruct the jury as to hypotheses requiring a verdict against the defendant, and to then further instruct them that it is their duty to be guided by the law as thus laid down to them.

7. ———: INSTRUCTIONS: APPEALS FOR ORATORICAL EFFECT. An instruction in a prosecution for malicious libel, which was otherwise correct, contained a peroration on the inviolable blessing of a free and independent press. *Held,* that it was properly refused.

*Appeal from the Phelps Circuit Court.*—HON. CHARLES C. BLAND, Judge.

REVERSED AND REMANDED.

*W. H. Murphy* and *Chas. H. Schubert* for appellant.

*James B. Harrison* and *Thos. M. Jones,* prosecuting attorney, for respondent.

ROMBAUER, P. J.—This is an action for criminal libel under the provisions of sections 3869 and 3870 of the Revised Statutes of 1889, which, as far as they apply to the case at bar, are as follows:

"SECTION 3869. A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation, or effigy, tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse, * * *.

"SECTION 3870. Every person who shall make or compose, dictate or procure the same to be done, or shall willfully publish or circulate any such libel or libels specified in the next preceding section, or shall in any way knowingly and willfully aid or assist in making, publishing, or circulating the same, shall be deemed guilty of a misdemeanor."

The defendant was found guilty and sentenced to pay a fine. He assigns for error in this appeal the refusal of the court to strike out the second amended information against him, the refusal of the court to quash the second amended information because filed more than one year after the date of the alleged offense, and such second amended information charged other offenses than those contained in the original information, the refusal of the court to quash that information, or to sustain his motion to arrest, on the ground that the matters charged do not constitute a criminal libel, the rulings of the court on the evidence and instructions, and that the verdict is against the law and the evidence.

The defendant is the publisher of the *Rolla New Era,* a newspaper printed and published in Rolla, Phelps county, Missouri. The publication charged to be libelous appeared in the issue of that paper on the eighteenth day of February, 1893, and the first information was filed on the twenty-ninth day of September, 1893. This information the prosecuting attorney amended by filing an amended information on the twenty-second day of March, 1894, by leave of court, and again amended by filing a second amended information by leave of court on the seventh day of November, 1894. When the second amended information was filed, the defendant moved to strike it from the files, and to discharge the defendant from further attendance, because there is no law permitting a second

amended information and because no valid charge
against the defendant was then pending in court. The
court overruled this motion, and the defendant excepted
and properly saved his exceptions. The defendant also
filed a motion to quash the information on the same
ground, and on the further ground that the second
amended information charges no offense, because the
publication is not libelous in its nature or defamatory
in its character, and because the date at which the pre-
tended offense is charged to have been committed was
more than one year before the filing of said second
amended information, and because the second amended
information undertakes to charge new and separate
offenses other than charged in the original information.
This motion the court likewise overruled, and the
defendant excepted and still excepts. The court, how-
ever, did upon defendant's motion strike out parts of
the second amended information, presumably on the
ground that it charged new matter.

It is important to notice in this connection that the
various amendments made by the state had no refer-
ence to the publication itself, which was set out *in haec
verba* in each of the informations. The amendments
have reference solely to the innuendoes and colloquia.
The civil code provides that, in an action for libel, it
shall not be necessary to state in the *petition* any ex-
trinsic facts for the purpose of showing the application
to the plaintiff of the defamatory matter out of which
the cause of action arose, but it shall be sufficient to
state generally that the same was published concerning
the plaintiff, and, if such allegation be not controverted
by the answer, it shall not be necessary to prove it
upon the trial. There seems to be no valid reason why,
in the absence of a statutory requirement to the con-
trary, the charge in the *information* should be more
specific, although the fact that the libel did refer to the

person named in the information as the person libeled would always have to be shown upon the trial, since the plea of not guilty puts the state to the proof of every material fact. It will be thus seen that the amendments were not touching matters of substance, and introduced in no sense any new cause of action. The defendant's motion, therefore, as far as it was founded on the special statute of limitations applicable to misdemeanors, was properly overruled. The rule in all cases, civil and criminal alike, is that, when the statute is once arrested, it remains so until the end of the prosecution, it matters not how imperfect the first pleading may be. The questions whether an information can be amended more than once, and whether the information as amended does sufficiently charge an offense, still remain.

The information as finally amended, and on which the defendant was tried and convicted, is as follows:

"Robert Meriwether, prosecuting attorney within and for the county of Phelps, and state of Missouri, for a second amended information now here gives the court to be informed and understand that W. J. Powell, late of the county of Phelps aforesaid, at and in the county of Phelps and state of Missouri upon the eighteenth day of February, 1893, contriving and intending then and there unlawfully, willfully, knowingly, and maliciously to defame and ridicule one Joseph Campbell, to provoke him to wrath, to expose him to public hatred, contempt and ridicule, and to deprive him of the benefits of public confidence and social intercourse, did then and there unlawfully, willfully, knowingly, and maliciously make a certain libel of and concerning him, the said Joseph Campbell, tending and intending by the said W. J. Powell to provoke him, the said Joseph Campbell, to wrath, to expose him to public hatred, contempt and ridicule, and to deprive him of the pub-

State v. Powell.

lic confidence and social intercourse, the tenor of which libel is as follows, to wit:

" 'Let's see, it was currently reported that Jo-Jo tried to indict some of the members of the Rolla school board once, because they refunded the district debt from a seven per cent debt to a five per cent one without asking his advice on the subject; a very glaring impertinence, of course, and one that ought to have been severely punished, but, alas, the unfeeling grand jury did not think so. Then, he was wanting some of the city council of the old city government put on the rack. Last term he was after a man who had finally quit pretending the great homage for the masterly ability and far seeing acumen, splendid business capacity and overpowering intellect of Jo-Jo, and Jo-Jo got enraged and with a mighty oath hied him to the grand jury. This effort expired of heart failure; but it is said he came near being indicted himself. Next, he was very busily engaged in the noble task of trying to beat a young man out of his means of making a livelihood, setting up things and getting people to make statements that they were not willing to make good publicly. Here was another case of heart failure. And now our humble self is the target of this grand (?) old man's spleen.' And the said W. J. Powell, at and in the county and state aforesaid, on the said eighteenth day of February, 1893, then and there further contriving and intending to then and there unlawfully, willfully, knowingly, and maliciously defame and ridicule him, the said Joseph Campbell, provoke him to wrath, expose him to public hatred, contempt and ridicule, and deprive him of the benefits of public confidence and social intercourse, did then and there unlawfully, willfully, knowingly, and maliciously publish the said libel by then and there causing the same to be printed in a certain public newspaper printed and published by him,

the said W. J. Powell, at the city of Rolla, in the said county of Phelps, called and known as the *Rolla New Era*, and by then and there on the said eighteenth day of February, 1893, and within the said county of Phelps, causing said newspaper so printed and published by the said W. J. Powell as aforesaid, and containing said libel so made and composed by the said W. J. Powell, as aforesaid, to be delivered to D. W. Malcolm, H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and divers other good and worthy citizens of the said county of Phelps, he, the said W. J. Powell, then and there, and by the publication of said libel in the manner and form as aforesaid, intending that the said D. W. Malcolm, H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and divers other citizens of Phelps county, to whom said paper so containing said libel, made, composed, and published as aforesaid by him, the said W. J. Powell, should read the said libel contained therein, and should understand the defamation, the ridiculous and opprobrious epithets, the false imputations and charges so contained in said libel, and the application thereof, as hereinafter more specifically charged as being made by him, the said W. J. Powell, as against and being applied to the said Joseph Campbell. And this informant charges the facts in this particular to be that the said libel was then and there read by the said D. W. Malcolm, H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and others, and the same with the defamation, the ridiculous and opprobrious epithets, the false imputations and charges contained therein, as hereinafter more specifically set out, against the said Joseph Campbell, being false and untrue, which he, the said W. J. Powell, then and there well knew at the time of his so making, composing, and publishing said libel in

the manner and form as aforesaid; and he, the said W. J. Powell, then and there further well knew that the said libel was tending to provoke him, the said Joseph Campbell, to wrath, to expose him to public hatred, contempt and ridicule, and to deprive him of the benefits of public confidence and social intercourse. And this informant, Robert Meriwether, as prosecuting attorney as aforesaid, charges the facts in the following particular to be that at the time of the making, composing, and publishing the said libel by him, the said W. J, Powell, in manner and form as aforesaid, the term Jo-Jo was the name of a being with the face, head, features, and instincts of a dog, with a body and limbs like those of a man, which being was named Jo-Jo. and extensively advertised and exhibited at the city of St. Louis, Missouri, by the management of Barnum's public circus and menagerie as one of the great curiosities and freaks of nature, and one of the great wonders of said circus and menagerie, and at the time of the publication of the said libel as aforesaid, and long prior thereto, the said term, Jo-Jo, was well understood by the said D. W. Malcolm, H. H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and other citizens of the said county of Phelps, to whom was so delivered the said papers so containing said libel made, composed, and published as aforesaid by the said W. J. Powell, to be the name of and to mean a being having the head, face, features, and instincts of a dog, and having body and limbs like those of a man, and extensively advertised and exhibited by the management of said Barnum's public circus and menagerie in said city of St. Louis as aforesaid as a great curiosity and freak of nature, and one of the wonderful creatures of said circus and menagerie; all of which said facts as aforesaid this informant charges were then and there well known by the said W. J.

Powell. And, so well knowing the said facts, he, the said W. J. Powell, who on the eighteenth day of February, 1893, was and long prior thereto had been the editor and sole proprietor of the *Rolla New Era*, the newspaper printed and published by the said W. J. Powell as aforesaid, on the said eighteenth day of February, 1893, in the libel made, composed, and published as hereinbefore set out, and in divers locals and articles theretofore made, composed, and published by the *Rolla New Era*, maliciously used the said term Jo-Jo as an opprobrious epithet personating the said Joseph Campbell, and caused it to be understood by the said D. W. Malcolm, H. H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and others, who read the said newspaper, that he was applying the ridiculous and opprobrious epithet of Jo-Jo to the said Joseph Campbell, and for the purpose of ridiculing him, the said Joseph Campbell, under the style and name of Jo-Jo, and by that part of said libel so made, composed, and published in manner and form as aforesaid by him, the said W. J. Powell, the tenor of which is as follows, to wit: 'Let's see, it is currently reported that Jo-Jo (meaning to be understood as speaking of Joseph Campbell as being under the name and opprobrious epithet of a Jo-Jo) tried to indict some members of the Rolla school board once, because they refunded the district debt from a seven per cent debt to a five per cent debt without asking his advice on the subject; a very glaring impertinence, of course, and one that ought to have been severely punished, but, alas, the unfeeling grand jury did not think so.' He, the said W. J. Powell, meant to charge, impute and ridicule, and meant to be understood as charging, imputing and ridiculing, and was so understood by the said D. W. Malcolm, H. H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and

others, who read that part of said libel last aforesaid set out, and that he, the said W. J. Powell, maliciously charged and imputed that the term Jo-Jo was a proper name and synonym to personate and to style and name Joseph Campbell, and under such style and name he intended to impute, and did impute and charge, that Joseph Campbell was a being with a head, face, features, and instincts of a dog, with limbs and body like those of a man, and was a distorted and unnatural being and a freak of nature, and that said Joseph Campbell had tried at a certain time (the particular time at which the said W. J. Powell meant thereby to charge being to this informant unknown) to have some member of said school board of said district indicted by the grand jury of the said county of Phelps (the particular member or members of which school board he, the said W. J. Powell, hereby meant to charge the said Joseph Campbell had tried to have indicted being also to this informant unknown) because the school board had refunded the school district debt to a five per cent one without asking the advice of the said Joseph Campbell, and that such conduct on the part of said Joseph Campbell was of a doggish instinct and of a doggish disposition, such imputations and charges so made by him in manner and form as aforesaid against the said Joseph Campbell being false and untrue, which he, the said W. J. Powell, then and there well knew, and so knowing the same to be false and untrue, and contriving and intending thereby to defame and ridicule him, the said Joseph Campbell, to provoke him to wrath, to expose him to public hatred, contempt and ridicule, and to deprive him of the benefit of public confidence and social intercourse, did then and there in manner and form aforesaid unlawfully, willfully, and knowingly and maliciously make, compose, and publish that part of said libel last herein above set forth, and that

said ridiculous and malicious imputations and charges were understood by the said D. W. Malcolm, H. H. Hohenschild, Henry Wood, Henry Dean, Charles Mc-Crae, W. H. Seamon, and others, who read said libel as aforesaid, as meant and intended by the said W. J. Powell to ridicule, charge, and impute, that the said Joseph Campbell did corruptly, beastly, and basely, like an unnatural and deformed creature with the instincts and principles of a dog, try to indict some member of the Rolla school board for the said school district of Rolla for no other reason or excuse than that his doggish proclivities prompted him, the said Joseph Campbell, to try to indict such members of the Rolla school board for the simple reason that they had refunded the district debt from a seven per cent debt to a five per cent one, all of which said imputations and charges were false and untrue, and known to be so by the said W. J. Powell.

"And this informant, prosecuting attorney as aforesaid, charges the facts in the following particular to be that at the time of making, composing, and publishing said libel by him, the said W. J. Powell, in manner and form aforesaid, a branch of the State University of the state of Missouri, known as the School of Mines and Metallurgy, was located at the said city of Rolla, Missouri, and had been so located for a long time prior thereto, and that said School of Mines and Metallurgy was an institution of learning supported by the state of Missouri, and that the said state, through its board of curators, then and there employed a large corps of professors and assistant professors to instruct the students of said school, and that a large number of students, young men and young women from different parts of the state, and of the United States, attended said School of Mines and Metallurgy for instruction taught in said institution, and that one D. C. Jackling

had been a student in said institution and had graduated therein with high honors while yet a young man, and that, immediately after graduation, he was employed as assistant professor in said School of Mines and Metallurgy, and had taught the branches therein allotted to him for more than one year prior to the publication of said libel, and that D. Jackling was an applicant for a continuation of his said employment and position as assistant professor in said school, and that, at the time of his said application and prior thereto, there was and had been a boarding house known as the "Club House," situated on the grounds of said institution, erected by and belonging to the state of Missouri and under the control of the state through its board of curators, whose duty it was to appoint some suitable person to take charge of said boarding house for the purpose of enabling the students, professors and assistant professors, to obtain board at reasonable rates while in attendance at said school, and that, at the time of the application of the said D. C. Jackling for a continuation of his said position as such assistant professor, one Henry Dean had charge of said clubhouse, and so had charge for at least one year last past, and that the said D. C. Jackling was a boarder thereat, and that, at the time of the said D. C. Jackling's application for the position of such assistant professor, his moral conduct was in issue before that part of the said board of curators of such institution, who had the power to employ him, as to whether or not he was a suitable person for such assistant professor by reason of his moral character and conduct, and that there was common talk on the streets in said city of Rolla, by the people of said city, that the said Henry Dean had made statements in writing and by affidavit derogatory to the moral character of the said

D. C. Jackling, all of which facts this informant alleges were then and there well known to the said W. J. Powell at and prior to the time of his so making, composing, and publishing said libel in manner and form as aforesaid, all of which facts were also then and there well known to the said D. W. Malcolm, H. H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and others, who read said libel, and he, the said W. J. Powell, so well knowing the facts as aforesaid, by that part of said libel so made, composed, and published in manner and form as aforesaid by him, the said W. J. Powell, the tenor of which is as follows: 'Next, he was busily engaged in the noble task of trying to beat a young man out of his means of making a livelihood, setting up things and getting people to swear to statements that they were not willing to make good publicly. Here was another case of heart failure. And now our humble self is the target of this grand (?) old man's spleen,' then and thereby meant unlawfully, willfully, knowingly, and maliciously to charge and impute, and meant to be understood as so charging and imputing, and was thus understood by the said D. W. Malcolm, H. H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and others, who read said libel as aforesaid, that the said D. C. Jackling was a young man of good moral character and habits, and qualified for the position of assistant professor in the said School of Mines and Metallurgy, and was about to be so employed, when the said Joseph Campbell, in order to gratify his ill will, petty spite, and malice toward said Jackling, did procure the said Henry Dean to make false statements in writing and by affidavit of and concerning the moral character and conduct of the said D. C. Jackling in secret, and for the purpose of presenting the said statements and affidavits of the said Henry Dean, and causing them to

be presented, in secret, to the members of said board of curators, whose duty it was to employ such assistant professors in said School of Mines and Metallurgy, in order to prevent the said D. C. Jackling from obtaining the position of such assistant professor, and thus deprive the said D. C. Jackling of his means of making a livelihood, all of which malicious charges and imputations so made as aforesaid by him, the said W. J. Powell, against the said Joseph Campbell being false and untrue, and well known then and there as false and untrue by the said W. J. Powell as false and untrue, and so knowing the same to be false and untrue, and maliciously, unlawfully, willfully, and knowingly contriving and intending to defame and ridicule him, the said Joseph Campbell, to provoke him to wrath, and to expose him to public hatred, contempt and ridicule, and to deprive him of the benefits of public confidence and social intercourse, did then and there in manner and form as aforesaid unlawfully, willfully, knowingly, and maliciously make, compose, and publish that part of the said libel last hereinbefore set forth.

"Wherefore this informant, prosecuting attorney as aforesaid, says that the said W. J. Powell at the time and place aforesaid, and in the manner and form as hereinbefore said, unlawfully, willfully, knowingly, and maliciously contriving and intending then and there to unlawfully, willfully, knowingly, and maliciously defame and ridicule said Joseph Campbell, to provoke him to wrath, to expose him to public hatred, contempt and ridicule, and to deprive him of the benefits of public confidence and social intercourse, did then and there in manner and form as aforesaid unlawfully, willfully, knowingly, and maliciously make and compose the said libel, and did then and there unlawfully, willfully, knowingly, and maliciously publish the

same in manner and form as aforesaid by causing and procuring the said newspaper, so printed and published by him, the said W. J. Powell, and so containing the said libel so made, composed, and printed in the said newspaper by him, the said W. J. Powell, to be delivered to the said D. W. Malcolm, H. H. Hohenschild, Henry Wood, Henry Dean, Charles McCrae, W. H. Seamon, and divers other good and worthy citizens of the county of Phelps, who understood the imputations, ridicule, charges, and ridiculous epithets as hereinbefore specifically charged to be against the said Joseph Campbell in manner and form as hereinbefore said, he, the said W. J. Powell, then and there knowing the said infamous charges and opprobrious and ridiculous epithets in said libel as hereinbefore specifically set forth to be entirely false and untrue, against the peace and dignity of the state."

We have set the information out in full to show that the pleader, for fear of omitting essential averments, overburdened it with innuendoes and colloquia, so as to conform to the requirements of such a pleading in the darkest ages of libel proceedings. Approved modern forms in these cases are very simple. All that the pleader need do is to set out the malicious publication libeling someone, and that the same had reference to the person named, and was of a character to provoke him to wrath or expose him to public hatred, contempt, or ridicule, etc. Where the person is not named, the fact of the intended application of the libel to him should be shown in a criminal proceeding by appropriate averments, and also that the application was so understood by the readers. Forms 93 and 96, Odgers, Libel and Slander, *674, *676. In other respects there is no substantial difference between the requisites of a good petition and those of a good information.

The objections made to the information in the case

at bar are that the publication is not libelous, and that the innuendoes are insufficient to show that it referred to Campbell. The word "Jo-Jo" is alleged to have been the name of a well known freak or monstrosity, part dog and part man. The information claims that it is a criminal libel to apply such a term to anyone, and it is certainly libelous to charge anyone with the procurement of false affidavits in order to prevent another from being appointed to a position of trust and profit. In *Price v. Whitely*, 50 Mo. 439, the statement, "He is an imp of the devil and cowardly snail," was held to be libelous; and in *Manget v. O'Neill*, 51 Mo. App. 35, we held it libelous to publish of one that he was a confidence man, a whelp, and a specimen too contemptible for any decent person to associate with. These were civil actions, but there is no difference in that respect between civil and criminal libel. In fact, a publication may be insufficient to sustain the former action, and yet sufficient to sustain the latter. Odgers on Libel [2 Eng. Ed.] *422. It has been held libelous to publish one "an impostor" (*Cooke v. Hughes*, R. & M. 112); "a hypocrite" (*Thorley v. Lord Kerry*, 4 Taunt. 355); "a frozen snake" (*Hoare v. Silverlock*, 12 Jurist, 695); "a mere man of straw" (*Eaton v. Johns*, 1 Dowl. N. S. 602); and even to publish of a man that "he will not sue in a particular country because he is known there." *Cooper v. Greeley*, 1 Denio, 347. We need not multiply authorities to show that, both in and out of this state, the charges contained in the alleged publication would be considered libelous.

The next objection is that the innuendoes and colloquia contained in the information were insufficient. The law on that subject formerly was so technical that it amounted to technicality run mad. An illustration is furnished by the case, where the defendant was charged and convicted of having said of and concern-

ing the plaintiff, "As sure as God governs the world, and King James this kingdom, you are a thief," and where a motion in arrest was interposed on the ground that there was no averment in the record that God did govern the world or King James the kingdom. *Dacy v. Clinch*, Sid. 53. The rule, however, has been for more than a century that innuendoes and colloquia are sufficient if the inference they seek to raise is at all admissible, and that the question, whether the expressions used were designed by the defendant to apply to the person to whom it is charged they were intended to apply, is a question of fact for the jury. We take this occasion to disapprove of the argument of the learned judge who delivered the opinion in *State v. Pulitzer*, 12 Mo. App. 6, which is sought to be supported by cases decided during the reign of James and Elizabeth. The law has not been as stated in those cases for centuries past. We conclude that the information filed in this case was sufficient, although its extreme prolixity is not to be commended.

Nor did the court err in permitting two amendments of the information. There is nothing in our criminal code which prohibits such a course. Section 4061 of the Revised Statutes provides that an information may be amended in matter of form or substance at any time by leave of court before trial, and the number of amendments is not limited. The defendant may obtain a continuance if, owing to the amendment, he can not go to trial without prejudice to his substantial rights. As here the defendant admitted upon the trial that the publication did refer to Campbell, and that he was meant by the term Jo-Jo, it is hardly conceivable how he could have been prejudiced by an amendment, the effect of which was simply to make such a reference obvious.

There was no error in the court's ruling on the

evidence. We decided at the present term that the reading of the statute, on which the information is based, to the jury, is not error in any case of misdemeanor. *State v. Morse, ante,* p. 303. It certainly can not be error in a case of criminal libel, wherein by the constitution and laws the jurors are the judges of both law and fact.

The constitution of this state provides that, in all suits and prosecutions for libel, the truth thereof may be given in evidence, and the jury under the direction of the court shall determine the law and the fact. The statute (section 3872, Revised Statutes) makes the same provision. In *State v. Hosmer,* 85 Mo. 553, it was said: "If the jury must determine the law under the direction of the court, then they must be guided by the directions which the court may give and not by what they may determine the law to be." That view, however, has been repudiated in *State v. Armstrong,* 106 Mo. 395, in which the construction placed by English courts on Fox's libel bill of 1792, from which these provisions are taken, was adopted, and it was held that the court is confined in criminal prosecutions for libel to advising the jury what the law is, leaving them at liberty to follow its direction if they see fit to do so, and to disregard it if in their opinion it is not the law. In that case the following instruction was given by the trial court, and approved on appeal: "The court instructs the jury that under the constitution of Missouri, and the statutes thereof, the jury are themselves the judges of the law of libel, as well as of the facts, and that they are not required to accept the instructions given by the court as being conclusive of what the law of criminal libel is."

As that decision is the last controlling decision of the supreme court and as such binding upon us, we are bound to apply it in determining whether the in-

structions given in this case by the court were warranted.

The court at the request of the state gave the following instructions among others:

"The court instructs the jury that the law of this state makes the jury the judges of both the law and the facts; the law, however, requires the court to give you instructions, declaring the law of the case as guides to you, and it is the duty of the jury to consider *and to be guided by the instructions of the court in determining the law of the case.*

"The court instructs the jury that in this case they are the judges of both the law and the facts, and have a right to give their verdict on the whole matter and to decide the question whether the publication charged be libelous or not, the truth of the explanatory statements in the information, averring and explaining the application of the publication to the prosecuting witness, Joseph Campbell, the truth or falsity of the publication, and whether or not it was published with malice."

It will be seen that instruction number 8 is fatally defective in telling the jury that it is their duty *to be guided by the instructions of the court* in determining the law of the case. That was the construction of the constitutional provision in *State v. Hosmer, supra,* but not in *State v. Armstrong, supra.* In preceding instructions given by the court the jury were told that they should find the defendant guilty, if they found certain facts to be established, which was a peremptory direction to the jury as to what the law was which they were not at liberty to disregard. We must consider that, under the decision in *State v. Armstrong, supra,* such peremptory instructions are inadmissible, and that all the court can do is to advise the jury as to the law and let them follow that direction or not, as they may be advised.

We may add in this connection that instruction number 7 asked by the defendant on the same subject was properly refused. The first part of that instruction is good enough, but the latter part, containing a peroration on "the inviolable blessing of a free and independent press," belongs to the rostrum and not the forum.

For error in the judge's instructions on this subject the judgment must be reversed and the cause remanded. So ordered. All concur.