# HELLER v. PULITZER PUBLISHING COMPANY, Appellant.

### Division One, December 22, 1899.

| 153 | 205 |
|---|---|
| 156 | 407 |

| 153 | 205 |
|---|---|
| 164 | 303 |

| 153 | 205 |
|---|---|
| 167 | 53 |

| 153 | 205 |
|---|---|
| e174 | 4501 |

| 153 | 205 |
|---|---|
| 177 | 2243 |

1. **Libel:** CONSTITUTION: APPLICATION. The Missouri Constitution extends the law of libel as found in Fox's Act, to "all suits and prosecutions for libel," applying it to civil as well as criminal cases. Otherwise, the underlying principles theretofore governing libel are the same.

2. ————: VERDICT FOR PLAINTIFF. The court can not direct a verdict for plaintiff in a libel suit.

3. ————: ————: CURED BY OTHER INSTRUCTION. An instruction in a libel suit that told the jury that "under the evidence adduced your verdict must be for the plaintiff," was error, and was not cured by another which told them that "you are yourselves the sole judges of the law of libel as to whether the alleged libelous publications were in fact libelous."

4. ————: READING LAW BOOKS TO JURY. It is not error for the trial court to refuse to permit counsel to read law books to the jury in a libel case or in any kind of a case.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty*, Judge.

REVERSED AND REMANDED.

*F. N. Judson* and *J. Clarence Taussig* for appellant.

(1) The court below erred in instructing the jury to find for plaintiff on the issue of libel or no libel, only the fact of publication being admitted, the jury thus being deprived of the power to render a general verdict on that issue of libel or no libel. Art. II, sec, 14, Constitution; Odgers on Slander and Libel (2 Ed.), p. 468; Bayles v. Lawrence, 11 A. & E. 920; Cox v. Lee, L. R. 4 Exch. 288; Parmiter v. Coupland, 6 M. & W. 105; Saxby v. Easterbrook, 3 C. P. D. 339; State v. Armstrong, 106 Mo. 395; Arnold v. Jewett, 125 Mo. 241; Cooley on Const. Lim. (6 Ed.), 564; 2 Greenl. on Evid. (15

Ed.), 411; Usher v. Severance, 20 Me. 11; Drake v. State, 20 Atl. Rep. 46; Goodrich v. Davis, 11 Met. (Mass.) 473. (2) A peremptory instruction to find for plaintiff in an action for libel, where only the fact of publication is admitted, is not only violative of the express provision of the Bill of Rights, but in effect makes the practice in libel cases what it was in England under Lord Mansfield, when it was found necessary to enact the Fox Libel Act in 1792. See argument of Thos. Erskin in Dean of St. Asaph's case. Also argument of Hamilton and opinion of Kent, J., in People v. Croswell, 3 Johnson's cases, 337. State v. Allen, 1 McCord (S. C.), 526; State v. Syphrett, 27 S. C. 29; Drake v. State, 20 Atl. Rep. 746; Cooley on Const. Lim. (6 Ed.) 564-567; Shattuck v. Allen, 4 Gray, 540. The jury find the law in the issue of "libel or no libel," "under the direction," but not under the compulsion of the court. Hazy v. Waith, 23 Colo. 556; State v. Powell, 66 Mo. App. 598. (3) This error of the court in peremptorily directing a verdict on the issue of libel or no libel was not cured by giving an instruction telling the jury at the same time that they were the judges of that issue. It was simply a case of absolutely contradictory instructions. Stone v. Hunt, 94 Mo. 475; Henchen v. O'Bannon, 56 Mo. 289. (4) The court erred in refusing to permit counsel for defendant, in the course of his argument to the jury on the issue of libel or no libel, to read to the jury as part of his argument from Townshend on Slander and Libel. 19 Am. and Eng. Ency. of Law, (1 Ed.), 620; Stout v. State, 96 Ind. 407; Harvey v. State, 40 Ind. 516; Hannah v. State, 11 Lea (Tenn.), 201; 1 Thompson on Trials, sec. 945.

*J. R. Myers* for respondent.

(1) The Constitution of Missouri directs that in all suits and prosecutions for libel the jury shall determine the law and the fact "under the direction of the court." Art. II, sec. 14, Constitution. (2) Language which imputes to one fraud,

or want of integrity in his business, is actionable *per se*, or a publication which imputes to a merchant or other business man conduct which is injurious to his character and standing as a merchant or business man, is a libel and implies malice. Naeinger v. Vogt, 88 Mo. 589; McGinnis v. George Knapp & Co., 109 Mo. 131; Mitchell v. Bradstreet Co., 116 Mo. 226; Callahan v. Ingram, 122 Mo. 355; Nicholson v. Rogers, 129 Mo. 136.

MARSHALL, J.—Plaintiff in this action sues the defendant, for publishing in its paper, the St. Louis Post-Dispatch, on the eleventh of November, 1893, the following:

## "HE HAS SKIPPED OUT.

"Martin Heller, a Contractor for Government Work, an Embezzler.

"Martin Heller, a contractor and builder residing at 1716 Geyer avenue, has disappeared, taking with him several thousand dollars belonging to the government and his sub-contractors. Heller is a well known stone contractor and builder and his work about town has been so satisfactorily done that he was well recommended to the officers at Jefferson Barracks, the United States Army post, when there were contracts to be let there. At present the government is doing a great deal of building at Jefferson Barracks. New quarters, large and handsome structures, are being built for the officers and men. Heller secured the contract for the stone work on all of these. The work was to have been done in sections. His work on the first building erected amounted to over $6,000.

"He sub-contracted for John J. McMahon, Gillick Bros., Wm. and Frank Ruprecht, Johannes Lime Company, and several others.

"It is stated that McMahon advanced him $1,500 to pay his (Heller's) employees, and that he did not use the money for that purpose.

"Letters were received from Heller by Messrs. McMahon, Gillick, Ruprecht and Johannes, stating that when they received his letters he would be on his way to Australia, and that he had jumped his bond and his contract with the government.

"He owes $500 to the Johannes Lime Company, and several hundred dollars to the Ruprechts.

"Gillick Bros. are in a measure protected, as they required him to furnish bond and they propose to hold his bondsmen.

"In the meantime Heller's employees are clamoring for their wages and it has required considerable tact on the part of the army officers in charge of the work, to keep it under way. The post is in actual need of new quarters and should the contractors not complete the work on time, they will be held to the forfeit."

Also for publishing substantially the same thing in its paper on the twelfth of November, 1893.

The answer admitted the publications, denied the other allegations of the petition, and affirmatively pleaded that plaintiff had a sub-contract for work on the Government buildings at Jefferson Barracks, which work was not completed, and that he left St. Louis, owing materialmen large sums of money for materials used on said work, and notified them that he was going to Australia, when in fact he had no such intention, and further pleaded that the matter complained of was copied from the Carondelet Progress, a reputable newspaper, published in the vicinity of the Barracks, and was published by defendant as an item of current news, believing it to be true, and without any malice towards plaintiff. Defendant also pleaded that at the plaintiff's request it afterwards published and gave equal circulation to the following retraction:

"HELLER HAS RETURNED.

"His Friends Say His Accounts Were Found to be All Right.

"In two articles published in the Post-Dispatch of No-

vember 11 and 12, 1893, it was made to appear that Martin Heller, a contractor and builder, at the time, engaged in contract work at Jefferson Barracks, had left the city, with his accounts with the principal contractors and with the Government unsettled, and that he was indebted to both. It is understood Mr. Heller returned to the city about a month ago, and he states that he left the city for the purpose of obtaining work, and that his accounts, when he left, were in proper shape and correct throughout. It is said by Mr. Heller's friends that the contracts on which he was engaged at Jefferson Barracks were complied with by him, and that the work was done in accordance with the contracts, and that there was no ground for the charges made by others, that there was any irregularity in connection with his work under those contracts, as stated in the Post Dispatch at that time. It was stated in the Post Dispatch at the time that Heller was a well-known contractor and builder, and his work in the city has been very satisfactorily done."

The reply averred that his contracts were nearly completed when he left and his willingness and offer to complete them on his return and the refusal of the original contractor to permit him to do so; denied that he had gone off with fifteen hundred dollars belonging to any one else, but averred that said sum was received from the original contractor and paid to the laborers and mechanics, and further averred that he left because of trouble with his employees about the amount of wages he should pay them, and because they threatened to kill and boycott him.

The evidence showed that the charges were partly true and partly not; that he did not go away with money belonging to any one else but because of trouble with his employees, and that he did go away owing large sums to the materialmen, and that suits were pending against him therefor at the time this case was tried in the circuit court.

Among others, the defendant asked and the court refused to give following instruction:

"The jurors are instructed that the defendant by the law is free to publish whatever it wishes to on any subject, but is responsible for all abuse of that liberty. That the court in this case gives such instructions to the jury as it deems proper; but the jury may disregard all such instructions, as they are the judges of both the law and the facts."

But instead the court gave the following instruction of its own motion:

"The jurors are instructed that the defendant by the law is free to publish whatever it wishes to on any subject, but is responsible for all abuse of that liberty. That the court in this case gives such instructions to the jury as it deems proper, but the jurors are not only the sole judges of the weight to be given to the testimony and the facts, but under the Constitution and law of Missouri you are yourselves the sole judges of the law of libel as to whether the alleged libelous publications were in fact libelous."

The court, of its own motion also gave the following instruction:

"The court instructs the jury as follows, viz.: Under the evidence adduced your verdict must be for the plaintiff on both counts of the petition; the only questions left for your decision, therefore, are those relating to the amount of damages to be assessed. Damages are three kinds, viz., nominal, compensatory and punitive,"—following this with a definition of each kind, as to which part of the instruction no point is here made.

During the argument defendant's counsel tried to read to the jury an extract from Townshend on Libel and Slander, in connection with one of the points he desired to make. On objection, the court refused to permit it to be done.

Plaintiff secured a verdict and defendant appealed.

Two errors are assigned by defendant:    1st, the giving of the mandatory instruction to find for plaintiff; and, 2d, refusing to allow counsel to read law-books to the jury, and of these in their order.

## I.

The first error assigned is the giving of a mandatory instruction to the jury to find for the plaintiff, and leaving only to the jury the question of the amount of the damages.

Defendant insists that this was error, 1st, because section 14, art. II of the Bill of Rights of our Constitution provides:    "That no law shall be passed impairing the freedom of speech; that every person shall be free to say, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and that in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact," and therefore the court erred in directing a verdict for the plaintiff, and in not leaving the question of libel or no libel to the determination of the jury; and, 2d, because this mandatory instruction is inconsistent with the instruction, above set out, which the court gave to the jury of its own motion, telling them that the court gave such instructions to the jury as it deemed proper, but that the jurors were not only the sole judges of the weight to be given to the testimony and the facts, but under the Constitution of Missouri the jury are the sole judges of the law of libel as to whether the alleged libelous publications were in fact libelous, and therefore it can not be discerned from the verdict whether the jury obeyed the one instruction or the other.

Time and space preclude a detailed review of the history of the powers of the court and jury, respectively, in libel cases. The matter is very well understood by the legal profession to-day, and the inquiring mind will find the subject exhaust-

ively discussed by the following text writers and cases: Odgers on Libel and Slander (2 Ed.) 468; Cooley on Const. Lim., (6 Ed.), p. 564; 2 Greenl. on Evid., (14 Ed.), p. 411; Newell on Slander and Libel (2 Ed.), pp. 281 to 292; "An Act to remove doubts respecting the functions of juries in cases of Libel," 32 Geo. III, Ch. 60,·Statutes at Large, Vol. 16, p. 264 (commonly called "Fox's Libel Act"); Baylis v. Lawrence, 11 A. & E. 920; Cox v. Lee, L. R. 4 Exch. 288; Parmiter v. Coupland, 6 M. & W. 105; Saxby v. Easterbrook, L. R. 3 C. P. D. 339; Bank v. Henty, L. R. 7 App. Cas. 741; Hazy v. Waitke, 23 Colo. 556; State v. Powell, 66 Mo. App. 598; State v. Armstrong, 106 Mo. 395; McGinnis v. Knapp & Co., 109 Mo. 130; Arnold v. Jewett, 125 Mo. 241.

The sum of the matter is that prior to Fox's Libel Act, the court directed the jury as to the law in libel cases as in all other criminal cases. Fox's Act provided that on an indictment or information for libel the jury may give a general verdict of guilty or not guilty upon the whole matter put in issue, "and shall not be required or directed, by the court or judge before whom such indictment or information shall be tried, to find the defendant guilty, merely on the proof of the publication by such defendant of the paper charged to be a libel, and of the sense ascribed to the same in such indictment or information. Provided always, that on every such trial, the court or judge before whom such indictment or information shall be tried, shall, according to their or his discretion, give their or his opinion and directions to the jury on the matter in issue between the King and the defendant, in like manner as in other criminal cases. . . . . . Provided, also, that in case the jury shall find the defendant guilty, it shall and may be lawful for the said defendant to move in arrest of judgment, on such ground and in such manner as by law he might have done before the passing of this Act; anything herein contained to the contrary notwithstanding."

It will be observed, first, that this Act applied only to criminal cases; and, second, that it was passed in the interest of the defendant. For, as was said by Lord BLACKBURN, in Bank v. Henty, L. R. 7 Appeal Cases, l. c. 775, "It certainly had always been my impression that there was a difference between the position of the prosecutor, or plaintiff, and that of defendant. The onus always was on the prosecutor or plaintiff to show that the words conveyed the libelous imputation, and if he failed to satisfy that onus, whether he had done so or not being a question for the court, the defendant always was entitled to go free. Since Fox's Act at least, however the law may have been before, the prosecutor of plaintiff must also satisfy a jury that the words are such, and so published, as to convey the libelous imputation. If the defendant can get either the court or the jury to be in his favor, he succeeds. The prosecutor, or plaintiff, can not succeed unless he gets both the court and the jury to decide for him."

Thus, in the first instance, upon demurrer or plea interposed by the defendant, the court decides the question of libel or no libel. If the decision is for the defendant, the matter ends as to that court, but if it is against the defendant, the case must go to the jury upon the question of libel or no libel, the court directing the jury as to the general principles of law touching libel, but the jury are at liberty to follow the directions or not, and if the jury find for the defendant, the case ends there as to that court, but if the jury find against the defendant, a motion in arrest by the defendant will lie in the same manner it would have done before the passage of the Act.

Our Constitution, in fewer words, is, substantially, the Fox Act, except that it has been extended to "all *suits* and prosecutions for libel," thus applying to civil as well as criminal cases. Otherwise the underlying principles are the same, as is shown by the adjudicated cases in this State. [State v. Armstrong, 106 Mo. 395; State v. Powell, 66 Mo. App. 598;

McGinnis v. Knapp & Co., 109 Mo. 131; Arnold v. Jewett, 125 Mo. 241.] In all other respects pertaining to a trial, except as to the question of libel or no libel, the power of the court is the same in a libel suit as in any other kind of a case. But while the court may sustain a demurrer to the plaintiff's petition, or nonsuit the plaintiff on the trial, or sustain a motion in arrest of a judgment against the defendant, it can not direct a verdict for the plaintiff in a libel case. In this respect libel cases differ from other cases. Counsel for plaintiff was therefore driven in this case to say: "That part of the Constitution which provides that the jury in libel cases 'shall determine the law' has no meaning or application to the trial of civil causes in this State, and should never have been put in the Constitution." Whether it *ought* to be in the Constitution is not for the courts to say. It is there, and applies as well to civil as to criminal cases. That it was not made to apply to slander cases, may or may not have been expedient, but as it is written it applies only to libel cases. And in this connection it is well to note that the cases of Callahan v. Ingram, 122 Mo. 355, and Nicholson v. Rogers, 129 Mo. 136, relied on by plaintiff, were slander cases, and hence have no application here. In Mitchell v. Bradstreet Co., 116 Mo. 226, an instruction like the one here complained of was given directing the jury to find for the plaintiff, and in this court it was contended that this was error under section 14, article II of the Constitution, and that it was the duty of the trial court to instruct the jury that they were the judges of the law as well as of the fact, but this court said: "No instruction of this character or presenting this phase of the case to the jury was asked by defendant." What is said in that case on rehearing must be taken in connection with what was said on first hearing about no such instruction having been asked, and with the fact that the power to direct a verdict was not challenged. So that case is not in conflict with the cases herein referred to, which deny that power to the court.

The circuit court, therefore, erred in giving the instruction directing a verdict for the plaintiff and this error was not cured by the instruction given that the jury is the judge of the law as well as the fact in libel cases, for the two instructions are wholly inconsistent, and it can not be said which instruction the jury followed.

## II.

The defendant argues that if the jury are the judges of the law in a libel case, counsel have a right to read law books to the jury, and that the trial court erred in refusing appellant's counsel the right to do so in this case, and in support of this contention counsel refers to Harvey v. State, 40 Ind. 516; Stout v. State, 96 Ind. 407, and Hannah v. State, 11 Lea, 201. These were all criminal cases, and the Tennessee case alone was a criminal libel case. It is argued, however, that in all cases where the jury are the judges of the law as well as the fact it is a substantial right of counsel to read law books to the jury, and in support of this counsel refers to 19 Am. and Eng. Ency. of Law (1 Ed.), p. 620, and the cases there cited, and to 1 Thompson on Trials, sec. 945.

We are of opinion, however, that as under Fox's Act the court or judge was expressly given the right to "give their or his opinion or direction to the jury on the matter in issue between the King and the defendant, or defendants, in like manner as in other criminal cases," so under our Bill of Rights it is the province of the court to give directions to the jury, that is, to define in general terms the law of libel, but not to command a verdict for the plaintiff, and as by section 2188, Revised Statutes 1889, the court is charged with the duty in civil cases of giving, in writing, all the instructions covering the law applicable to the matters in issue, which the parties ask and the court thinks proper, or which the court may give of its own motion. It was never intended by the framers of our

Constitution in adopting the Fox Act, to permit the practice of getting the law before the jury in any other manner than by instructions asked of and given by the court.    [Sparf v. U. S., 156 U. S. 51.]    Allowing counsel to read law books to the jury would not only tend to confuse the jury, but might present the unseemly spectacle of counsel trying to convince the jury, by what some author says, whose ideas are not followed in this State, or by some decision of a court of some other State where the adjudications are not in accord with ours, that the directions of the court were not the law; and thus the due and orderly administration of justice, so necessary to be observed, would be turned into a farce and perhaps an insult to the judge of the trial court.

Whatever may be the practice in other States, it is not permissible in our State to read law books to a jury in any kind of a case, and the trial court did not err in stopping counsel for defendant in this case, when he attempted to do so.

For the  error in giving the mandatory instruction to find for the plaintiff, the judgment of the circuit court is reversed, and the case remanded.

All concur.