CHAS. S. SANDS, Respondent, v. G. W. MARQUARDT & SONS, Appellant.

Kansas City Court of Appeals, May 8, 1905.

1. **PARTIES: Pleading: Amendment: Corporation.** An original and amended petition are considered and the amendment held not to substitute a different corporation defendant from the original petition.

2. **LIBEL: Court and Jury.** On the trial of a libel case it is the duty of the court to define the law of libel in proper instructions; these are for the information and not the control of the jury which has a right to make its own law supreme.

3. ———: ———: **Damages: Instruction.** But the jury's function as judge of the law ceases in passing on the question of libel; and the issues pertaining to damages must be considered and decided in obedience to the law given by the court; and an instruction conferring upon the jury the right to judge the law of the whole case is error.

4. ———: ———: **Instruction.** An instruction directing the jury to determine the law "within the instructions of the court" is an unwarranted limitation under the lawful right of the jury to determine the issue of libel.

5. ————: **Author of: Instruction.** An instruction authorizing the jury to find the defendant to be the author of a libel if they found a certain letter imputed dishonesty to the plaintiff is condemned.

Appeal from Sullivan Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED AND REMANDED.

*Wattenbarger & Bingham* and *Campbell & Ellison* for appellant.

(1) The plaintiff sued an Illinois corporation that was an entity—a person who could have no legal existence other than under the Illinois law. Plaintiff then substituted another and different corporation, to-wit: A corporation organized under the laws of Iowa. In the meantime the two years statute of limitations had run. Although the corporate name may be the same, still the place and law under which they are organized, must be looked to, to determine the particular person. Railroad v. McCall, 89 Ala. 375; Little v. Water Co., 9 Nevada 317; Hajek v. Society, 66 Mo. App. 568; Thompson v. Allen, 86 Mo. 85. The first two cases cited above are directly in point. Rece v. News Co., 3 L. R. A. 572; Jaicks v. Sullivan, 128 Mo. 177. (2) Instruction numbered 1 directs the jury, that if defendant by one of its members, agents or servants, wrote and mailed the letter addressed to B. L. Gates, a copy of which is introduced in evidence—and that if the words used in the letter are not true, it is the duty of the jury to find for the plaintiff. That part of this instruction ignores the question whether the agent or servant mentioned, had authority to act for the corporation. Its janitor or its bell boy are included in the terms agent and servant. (3) This instruction also violates the constitutional provision that in libel cases the jury is the judge of both the law and facts. This instruction

in effect directs the jury that if the defendant wrote and mailed the letter, and that it was received and read by Gates, and that the letter was not true; then they must find for the plaintiff and assess his damages; and does not leave the question of libel or no libel to the jury. In actions of this kind the court cannot direct a verdict in favor of the plaintiff. Heller v. Co., 153 Mo. 205. (4) Not only does this instruction inform the jury, that if the words of the letter impute dishonesty to plaintiff then the law presumes the letter was not only written by defendant, but written in malice. The words used in the letter although imputing dishonesty to plaintiff could not be any evidence that defendant wrote it.

O. D. Jones for respondent.

(1) The appearance to the merits and defense by a party is a general appearance. Orear v. Clough, 52 Mo. 55-7; Power v. Moore, 55 Mo. 118. Cannot "appear, disappear and reappear." A corporation by appearing admits its corporate existence and in this case its identity. Seaton v. Railroad, 56 Mo. 416-17; Page v. Railroad, 61 Mo. 78-80; Meyer v. Boadwell, 83 Mo. 571; Baisley v. Baisley, 113 Mo. 545. (2) One who maliciously writes an untrue statement to a third person, with the intention of causing him to lose his situation, which result follows the receipt of the letter, is liable to an action of tort for the damages sustained as the natural and proximate result of the wrong. Hollenbeck v. Ristine, 105 Iowa 448; Walker v. Cronin, 107 Mass. 555; Luck v. Assembly, 19 L. R. A. 408-9; Chipley v. Atkinson, 23 Fla. 206; Monsat v. Snyder, 105 Iowa 500; State v. McIntire, 115 N. C. 769; Allen v. Wortham, 11 Ky. L. Rep. 697.

JOHNSON, J.—This action was brought on November 15, 1899, in the circuit court of Adair county. Afterwards, on plaintiff's motion for change of venue,

it was removed to Sullivan county where it was tried resulting in judgment for plaintiff in the sum of nineteen hundred dollars.

Plaintiff, by occupation a watchmaker and jeweler, was, according to the allegations of his petition, on the 7th day of December, 1897, in the service of B. L. Gates who at the time was engaged in the jewelry business at Sioux Falls, South Dakota. Prior to this employment, plaintiff had been working in a similar capacity for the Minto Jewelry company at El Reno, Oklahoma. Defendant corporation was engaged in the wholesale jewelry business in Chicago, Illinois. It is charged in the amended petition upon which the case was tried, that "on and prior to December 7, 1897, the defendants for no cause whatever had conceived a bitter ill will towards plaintiff and intending to injure him in his good name and in his business and employment as a jeweler composed and caused to published of and concerning the plaintiff and sent the same to his said employer the following false, willful and malicious libel signed by the defendant in the name and style of G. W. Marquardt & Sons and caused it to be directed and mailed and sent through the United States mails from the city of Chicago to the city of Sioux Falls in the State of South Dakota to the said B. L. Gates in whose employ plaintiff then was as aforesaid . . . That said libel was in words as follows: 'In regard to the man referred to in your letter (meaning and referring to plaintiff) would say, we do not know in all our experience, which has covered a period of about forty-five years in the wholesale business any more disreputable, dishonest, thoroughly unworthy as well as ungrateful piece of humanity. We know him thoroughly from the sole of his foot to the top of his head. He has within a very short time been discharged by one of our very best customers in El Reno, Okla. Territory (meaning the said Minton Jewelry Company). This customer was up here

this summer and purchased $1,200 worth of goods, and we were surprised to hear that he had employed him. We told him what we thought of him and he wrote us the other day that what we said of him was true in every respect, and he had discharged him, so do not on any account have anything to do with him. We will say right here that we will be glad to assist in any way in procuring a watchmaker, and if you write us before engaging one we will give you our experience. We know of a young man here in Chicago, who would work for perhaps $12 to $15 per week. He is a young man of fair ability and quite ordinary in appearance. However, we would not hesitate hiring him, as we have known him quite a long time. If you desire we will speak to him for you.

"The customer referred to above in El Reno, wrote us the other day giving us authority to procure him a watchmaker, but as yet we have been unsuccessful. However, we have written to our traveller, Mr. Dominick, who will be on the lookout for us, and in all probability you will hear from him shortly.

"Yours respectfully,

"G. W. MARQUARDT and SONS.'

"Plaintiff says that it was true that defendants were well acquainted with him in his said business and as a watchmaker; but he avers that their assertions and statements that he was unworthy, dishonest and disreputable were willfully and maliciously false, as the defendants well knew. Plaintiff says that by reason of said false, willful and malicious libel composed and sent to said Gates as aforesaid, plaintiff's then employer, he was influenced and caused to and did discharge plaintiff after an employment of only ten days and in violation of his contract with plaintiff, which he did almost immediately after the receipt of said letter. That by reason thereof plaintiff lost his place and wages for four months at seventy-eight dollars per month, according to his contract with said Gates, and was put to the ex-

pense of hunting another position, and by this and the loss of time therein, he was damaged," etc.

In the original petition plaintiff averred that, "defendants are a mercantile corporation organized under the laws and doing business as wholesale jewelers in the city of Chicago and State of Illinois." An answer, duly verified, was filed, denying that defendant "is a mercantile corporation organized under the laws of the State of Illinois, as set out in the plaintiff's petition." Thereafter, plaintiff, on October 22, 1900, filed his amended petition identical in its allegations to the original with the additional statement that defendant corporaton was organized under the laws of Iowa. The contention of defendant that two separate corporate bodies are described in these two pleadings is not well founded. The place of incorporation, a fact immaterial to the cause of action pleaded, is not disclosed in the original petition. The averment upon which defendant bases the assumption that its incorporation is alleged to have been under the laws of Illinois does not admit of such construction. Two facts are stated—first, that defendant is an artificial entity legally created; second, that the headquarters of its business are in the city of Chicago. In the amended petition the pleader did not in alleging the place of defendant's creation substitute a different person from the one sued. The statement added was descriptive, unnecessary and without effect. This conclusion sufficiently disposes of this branch of the case.

In instruction numbered one given on plaintiff's behalf the jury in effect was directed to return a verdict for plaintiff upon the findings that defendant wrote and mailed to Gates the letter complained of; that the charges therein contained were false, made with the intent and for the purpose of injuring plaintiff and resulted in plaintiff's discharge. The only definition of the law of libel given to the jury appears in plaintiff's fourth instruction and is as follows: "In cases of this character

the jury is to determine the law and the facts—the facts to be determined from the evidence introduced and the law within the instructions of the court." In thus instructing the jury palpable error was committed in two particulars: First, in declaring that it was the duty of the jury to determine the law of the whole case; and, second, in setting bounds to the exercise of its right to decide the questions of law, the determination of which in this class of cases rests exclusively within the province of the jury.

In libel cases the issues may be divided into two classes: one of which relates to the libel, the ultimate fact, and the other to the damages. As to the first, the right of the jury to make its own law is supreme. It is true the duty is upon the court to define the law of libel in proper instructions, but these are for the information, not the control of the jury and may be disregarded. The same purpose dwells in the salutary provisions of the law of libel now in force in this state that procured the enactment by the British Parliament of Fox's Libel Act in 1792, of the first section of which our law is a counterpart. The design is to safeguard freedom of speech and to protect the exercise thereof, except when individual rights are invaded. The provisions of this law, "that in all suits and prosecutions for libel the truth thereof may be given in evidence and the jury under the direction of the court shall determine the law and the fact" is for the protection of defendants in such cases; the right is guaranteed to a defendant to have the jury say whether or not he has in law transgressed even after the court has construed the matter contained in the publication to be libelous.

But after the jury has found the issue of libel in plaintiff's favor, its functions as a judge of law are at an end and the dependent issues pertaining to damages must be considered and decided in obedience to the law given by the court. They bear no relation to freedom of

speech, and the defendant found guilty of unjustly assailing the reputation of plaintiff must respond in damages according to the settled rules of law. Prejudicial error was committed in conferring upon the jury the right to adjudge the law of the whole case.

Equally as flagrant was the restriction placed upon that right with respect to the fact of libel. Directing the jury to determine the law "within the instructions of the court" was an unwarranted limitation imposed upon the exercise of lawful right. It compelled a degree of obedience to the court's commands which deprived the jury of sovereign power and rendered nugatory the protection accorded defendant under the law of libel. Some of the authorities sustaining the views herein expressed are as follows: Heller v. Pulitzer Pub. Co., 153 Mo. 205; State v. Armstrong, 106 Mo. 395; Arnold v. Jewett, 125 Mo. 241; State v. Powell, 66 Mo. App. 599.

The giving of plaintiff's instruction numbered five also was error. The jury was told, "if you find the words used in the letter in evidence imputed dishonesty and unworthiness to plaintiff in his business and that he is disreputable generally and in his trade and business and that they were untrue, then it is presumed in law that they were written and published of plaintiff by defendant in malice." We are unable to conjecture any principle under which the presumption announced would follow the facts premised. To single defendant out as the author of the letter from the sole fact of the libelous character of its contents without proof of any other facts is too unreasonable to merit serious consideration. Nor can it be said this error was cured in other instructions given. Considered in connection with them, the rule stated in the language under consideration is contradictory to that given in instruction numbered one; and the jury had the right to use either one as a guide. The error is apparent. [Stewart v. Andes, 110 Mo. App. 243, 84 S. W. 1134.]

113 App.—32.

We find no other error in the case. The judgment is reversed and the cause remanded. *Broaddus, P. J.* concurs. *Ellison, J.,* not sitting.