ST. LOUIS CLOTHING COMPANY, Appellant, v. J. D. HAIL DRY GOODS COMPANY et al.

### Division One, May 15, 1900.

1. **Libel:** LETTER: ALTERATION FOR PUBLICATION. Where the defendant published a part of a letter written by himself to a wholesale house, concerning a letter purporting to have been written by that house to the plaintiff, a rival merchant, plaintiff in a libel suit can not complain because the whole of the letter was not published in the advertisement, if the letter actually was not seen by the public, although the words therein contained were more libelous and hurtful than the letter as actually published. In such case it is not error to instruct the jury to confine their attention to the letter as published.

2. ———: ADVERTISEMENT: "FAKE." Two rival merchants published as parts of advertisements letters received by them from and written by them to a wholesale cloak house, whose goods both had bought, and the defendant in his advertisement charged the plaintiff's letter and advertisement as being fakes. The evidence is fully reviewed, and *held*, that plaintiff was not entitled to any actual damages, no exemplary damages being claimed.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

AFFIRMED.

*Barnett & Barnett* for appellant.

The court erred in giving instruction number 1 on behalf of defendants. The letter as published by defendants purporting to be written September 20, 1896, by the J. D. Hail Dry Goods Company to the Rothschilds is charged in plaintiff's petition to be false and defamatory, and not true or genuine. It is a part of the libelous publication, the whole of which is charged to be false and defamatory. Therefore the court erred in telling the jury that said letter

is not complained of by plaintiff in its petition and in telling them that it was no part of the alleged libel, and that the jury should not consider said letter in arriving at their verdict. It is error for the court in its instructions to misstate the issues as raised by the pleadings. Russell v. Railroad, 26 Mo. App. 368; Welsh v. Edmonson, 46 Mo. App. 282; McDonald v. Railroad, 32 Mo. App. 70; Bailey v. Beasley, 32 Mo. App. 406; Beauchamp v. Higgins, 20 Mo. App. 514; Condon v. Railroad, 78 Mo. 567; Martin v. Johnson, 23 Mo. App. 96; Henry v. Bassett, 75 Mo. 89.

*Sangree & Lamm* for respondents.

(1) It has always been the law in this State that, while plaintiff may not prove words of a similar import to those alleged, yet it is enough to prove so much of the words as contain the poison of the charge, and words extraneous thereto will be disregarded. Coe v. Griggs, 76 Mo. 619; Baldwin v. Fries, 46 Mo. App. 288; Birch v. Benton, 26 Mo. 154; Bundy v. Hart, 46 Mo. 460. It follows, *a fortiori*, that the court may undertake to direct the jury to the words bearing the poisonous charge, or, on the other hand, eliminate those parts of an alleged libelous article which are innocuous. This was all the court did. (2) Defendants stated all the facts at the time on which they based their conclusion. If they drew the wrong conclusion as to the advertisement being a "fake," the antidote went with the poison, and there could be no libel. Miller v. Folmsbee, 59 Mo. 144; Trimble v. Foster, 87 Mo. 49. (3) Respondents' advertisement was invited by appellant's, and was a proper defense against a business attack. 13 Am. and Eng. Ency. of Law, bottom pp. 331 and 332, and notes; Meyers v. Kaichen, 75 Mich. 272; Donohue v. Gaffy, 54 Conn. 257; Odger's L. & S., 50 and 51.

MARSHALL, J.—This is an action for libel.   The two corporations are engaged in business in Sedalia, the plaintiff in the clothing business and the defendant in the dry goods business.   Both dealt in ladies' cloaks and wraps and in this regard were competitors.   For about two years prior to 1896 the defendant had been selling in Sedalia cloaks made by S. Rothschild & Bro. of New York.   In August, 1896, the secretary of the plaintiff met the Rothschilds' agent for the State of Illinois, in Chicago.   That· agent had sold his samples, but he and the secretary went to Milwaukee and met Rothschilds' agent for Wisconsin.   The meeting resulted in the secretary buying some cloaks from that agent.   The plaintiff testifies that he was to have the exclusive privilege of selling the Rothschilds' cloaks in Sedalia.   The Wisconsin agent denies this, and says the plaintiff wanted such an exclusive privilege but he told him he had no power to grant it and that he must see Rothschilds' agent for Missouri who had power to grant it if the Rothschilds approved it.   He further says the secretary of plaintiff then wanted to know if any goods had been sold by the Rothschilds to any one else in Sedalia, and he telegraphed to the Rothschilds and they answered in the negative.   On the 9th of September the plaintiff wrote to the Rothschilds saying the defendant was selling their cloaks, and that they had broken their contract with plaintiff, giving it the exclusive right to sell their cloaks, and demanded a discount of ten per cent off of plaintiff's bill, under penalty of plaintiff replacing their goods with others.   On September 11th, the Rothschilds answered saying the plaintiff might be right from its standpoint, but that the claim was exorbitant, and saying at the time they sold to plaintiff they had not sold and did not contemplate selling to anyone else, but that rather than have any trouble they would allow a discount of five per cent on the plaintiff's bill when due.   On September 11th, the plaintiff wrote.

Rothschilds insisting upon ten per cent discount and asking an answer by wire. On September 16th, Rothschilds wrote plaintiff, "Will allow you ten per cent on present indebtedness when paid." On September 19th, the plaintiff published in the Sedalia papers the following advertisement:

"A STUPENDOUS CLOAK SALE.
S. Rothschild & Bro.

"Fine jackets and capes to be slaughtered. Twenty per cent discount, 1-5 off from regular price.

"Never before in modern merchandising in a regular channel has it fallen to the lot of any merchant to be able to retail new merchandise at the beginning of the season at above named discount.

"While this sale of ours may work hardships on our competitors, it is certainly a boon to our customers. The latter part of July when placing our cloak sale order with S. Rothschild & Bros., one of the largest cloak manufacturers and importers of New York, we had obtained from them the sole agency for Sedalia of their entire line for this season (the agency has been secured in order to protect our patrons in the way of giving them exclusive styles). In due time we received the goods, marked them, and placed them on sale, when, to our surprise, we discovered that the above-named manufacturers had broken their contract with us, and sold to a prominent dry goods firm of this city, their goods also. In answer to a damage claim made by us we received the following letter which explains itself:

" 'S. ROTHSCHILD & BRO.

" 'Nos. 428, 430 and 432 Broadway.

" 'Cloaks, Wraps, Suits and Waists.

" 'New York, September 17, 1896.

" 'St. Louis Clothing Co., Sedalia, Mo.

" 'Dear Sirs:—We have your favor of the 9th inst., and while you may be right from your standpoint, we beg to

say that the claim you make seems rather exorbitant. At the time you bought the goods we had not sold anybody else in Sedalia, neither did we contemplate doing so. However, rather than have any disagreement with you, we will, at the time you pay your bill to us, allow you the claim.

" 'Please let us know by return mail that this is satisfactory.

." 'Very respectfully yours, S. Rothschild & Bro.'

"Commencing this day we will give a discount of 20 per cent, or 1-5 off on all jackets, and capes, insuring you thus wraps at about manufacturer's cost. S. Rothschild & Bro.'s loss will be your gain.

"Come early, make your selection, as no time this season will you be able to duplicate our offer."

On September 19th, the defendant corporation wrote Rothschilds as follows:

"Sedalia, Mo., September 19, 1896.
"S. Rothschild & Bro., New York.

"Gentlemen:—In this morning's issues of our local paper appears an advertisement of the St. Louis Clothing Co. (a copy of which is inclosed) containing a letter represented to be from your house.

"Is this a fake simply, or is it true, is this letter genuine? Have they any of your goods? Have they ever had? Kindly answer by wire QUICK.

"If this is a fake, pure and simple, will you send a letter for publication by first mail. Hurry."

On September 22d, Rothschilds telegraphed the plaintiff offering a discount on its bill of twenty-five per cent if it would send New York exchange for what it owed them at once, adding that plaintiff's check would not do, and saying if plaintiff was solvent it would accept the offer, and if it did not do so they would regard it as indicative of financial weakness.

To this the plaintiff replied on the same day offering to

send New York exchange that day if the Rothschilds would allow one-third off from the bill or it would pay the bill when it fell due. The Rothschilds' replied on the same day asking plaintiff to mail a copy of its last inventory with full information as to its present financial condition, and if unfavorable they would accept plaintiff's offer of cash with one-third off, but added, "no merchants valuing their credit would refuse to pay less twenty-five per cent. We withdraw our offer until we have your reply." On the same day the plaintiff replied refusing to send statement and renewing the offer of cash with one-third off, or to pay at maturity. on September 23rd, the Rothschilds telegraphed plaintiff expressing astonishment at its refusal to accept their offer and to send statement, and offering to take cash with one-third off if plaintiff was unable to pay any more, or to allow the plaintiff to make a statement to the dry goods clearing house examiner or the commercial agencies, and reserving the privilege of replevying if plaintiff's reply was unsatisfactory. On the same day the plaintiff telegraphed Rothschilds standing by their offer of the day before and saying it would be withdrawn if not accepted that day. On September 24th, the Rothschilds telegraphed plaintiff: "Your offer declined and ours withdrawn." On the same day Rothschilds by wire offered their account against plaintiff for $1,118.50 to the Third National Bank of Sedalia, for $800. Plaintiff was a customer of that bank and the bank showed it the offer, and plaintiff furnished the money and the bank ostensibly bought the Rothschilds' claim, but in reality the plaintiff bought it.

On the 24th of September, Rothschilds answered the defendant's letter of the 19th as follows:

"New York, September 24, 1896.

"J. D. Hail Dry Goods Co., Sedalia, Mo.

"Letter published by St. Louis Clothing Co., is garbled and not as written; they published false statements and used

our name in newspaper without our knowledge or consent. Not desiring their further patronage, we wired offering them settlement which they refused, and instead wired us an offer less one-third, which offer we declined, as it looks too much like "skinning." We, however, offered the claim against them to a bank in Sedalia by telegraph to-day, and will wire you results. Full particulars go by mail. If you want some stock to offset this contemptible action of theirs, we will express a lot of new styles and perfect goods to sell less fifty per cent. Rush-answer."

Thereafter on the 27th of September the defendant published the following advertisement in the Sedalia papers:

*"J. D. Hail Dry Goods Co.*  |  *J. D. Hail Dry Goods Co.*

## "FAKE ADVERTISING EXPOSED.

"$2,500 Worth of New Cloaks and Jackets at 50c on Dollar.

"In last Sunday morning's issue of the Democrat an advertisement appeared, headed, "A Stupendous Cloak Sale," and claiming a great slaughter of S. Rothschild & Bro.'s garments. It is well known in this community, and especially by the merchants, that we have for more than two years handled Rothschilds' cloaks, and when they mention in that ad. a dry goods house, it was thoroughly understood by the entire community they referred to this store.

"Believing this ad. to be a fake pure and simple, and a dodge to deceive the people, we began a speedy investigation, and before the ink was dry a copy of the ad. was on its way to New York with the following letter:

" 'Sedalia, Mo., September 20th, 1896.
" 'S. Rothschild & Bro., New York.
" 'Gentlemen:—In this morning's issues of our local papers appears an ad. of the St. Louis Clothing Co. (a copy of which is inclosed) containing a copy of a letter represented to be from your house. Is this a fake, pure and

simple, or is it true? Is the letter genuine? Kindly answer by wire quick.

"'J. D. Hail D. G. Co.,

"'J. D. H., Pres.'

"The following telegram came in answer:

"'New York, September 24, 1896.

"'J. D. Hail Dry Goods Co., Sedalia.

"'Letter published by St. Louis Clothing Co. is garbled and not as written; they published false statements and used our name in newspaper without our knowledge or consent. Not desiring their further patronage, we wired offering them settlement which they refused, and instead wired us an offer less one-third, which offer we declined, as it looks too much like "skinning." We, however, offered the claim against them to a bank in Sedalia by telegraph to-day, and will wire you results. Full particulars go by mail. If you want some stock to offset this contemptible action of theirs, we will express a lot of new styles and perfect goods to sell less fifty per cent. Rush answer.

"'S. Rothschild & Bro.'

"On receipt of this we sent the following wire:

"'Sedalia, Mo., September 25, 1896.

"'S. Rothschild & Bro., New York.

"'Express a thousand dollars in jackets at once, sizes 32 to 40, in new, nobby styles; some browns and tans, with the larger portion of sizes small. If this shipment leaves New York to-day it will reach us Monday morning. Hurry.

"'J. D. Hail D. G. Co.'

"This shipment will add about one hundred and fifty new garments to our already large stock of new garments

just in, and the entire line of Rothschilds' garments will be on sale

## "TUESDAY MORNING AT 9 O'CLOCK AT HALF PRICES.

"This store believes in advertising—legitimate advertising—but has no patience with fakes or misrepresentations of any sort. It has been this store's constant aim to elevate the standard and make advertising profitable by making only such statements as could be fully established by the most critical tests, thereby assuring the public that any newspaper statements could be fully relied on. When this point is reached and the community knows that every statement as to quality and price is true, then advertising is worth something, but as long as such deceptions as these are practiced traders are kept in doubt and suspicion and legitimate advertising suffers and is rendered profitless.

"We are no fighters, and as a rule have no time or inclination to busy ourselves with such matters and are too busy with our own affairs to do so had we the inclination, and beg the pardon of the readers of our advertising for burdening you with this, but when such fakes are thrust at this house we feel that we owe it to the community to hold it up for your inspection, and should not these few extracts satisfy our friends on the corner, we have in our possession all the letters, telegrams, etc., that have passed between them and the Rothschilds during this entire controversy, with permission to publish, and if it becomes necessary for this store to further defend itself against this attack, the community will be favored with some 'mighty' interesting reading matter.

"The following little story is drawn from the Detroit Free Press:

" ' "Joshua," the old man was saying, in an effort to divide the surplus of his experience with his young hopeful,

"Joshua, always be polite ter everybody. Remember ye ain't no millionaire, an' ye can't afford to put on too many important ways."

" ' "Well, I ain't so sure about that," was the reply. "It seems to me they's lots o' people standin' 'round ready ter impose on ye ef ye don't show some spunk."

" ' "Ye hev ter bear lots o' things in this life. But's work ez counts. Remember the little busy bee. He jes' keeps a-workin', an' a-workin', day in an' day out. An' they's mighty few bees, I'm given ter understand,' ez can't look back on their lives with satisfaction an' be pinted out ter the neighbors ez a success; an' all because they jes' keeps on a workin' an' a workin."

" ' "That's so, father, but there's one trait of character 'bout the bee that you ain't dwelt on."

" ' "What's that?"

" ' "He don't 'low nobody ter sit on 'im." '

"In the meantime remember that $2,500 worth of Rothschilds' cloaks will be on sale Tuesday morning at half price, and the remainder of our entire stock at

"Special Reduced Prices.

"J. D. Hail Dry Goods Co."

Thereupon the plaintiff instituted this suit making the advertisement of September 27th the basis thereof, and laying its damages at $25,000. The defendant's answer puts in issue the claim that plaintiff had an exclusive right to sell Rothschilds' goods, the alleged breach of such a contract, then pleads the facts as above set out concerning the negotiations between plaintiff and Rothschilds and the sale of that account; admits the publications by plaintiff on September 20th, and by defendant on the 27th as hereinbefore set out; denies the truth of plaintiff's advertisement and says it was not made for legitimate advertising purposes; says plaintiff never received any such letter from Rothschilds as is pub-

lished by it, but that it was garbled, altered and bogus; denies malice in its publication of the 27th, and then pleads the truth of that publication and also mitigating circumstances.

The jury found for the defendant, and the plaintiff appealed.

The principal point relied on by appellant is the giving of the defendant's first instruction, which is as follows:

"The court instructs the jury that there is no charge in the petition that the letter written by the J. D. Hail Dry Goods Company to S. Rothschild & Bro. on September 20, 1896, is not true and genuine, nor does the plaintiff claim damages because of said letter of inquiry or its publication, and therefore if the jury believe from the evidence that the defendant corporation copied said letter as published from a sketch preserved in Sedalia, and believed it to be true at the time of publication and published the same, yet it being no part of the alleged libel, it should not be considered by the jury in arriving at their verdict."

The point of the objection is that the defendant's letter to Rothschilds was in fact different from the letter published on the 27th of September, as a part of the alleged libel, and therein stated to have been sent to Rothschilds, and it is contended that Rothschilds' answer of September 24th, conveys a different impression because of such differences between the defendant's letter to Rothscholds as actually sent and as stated in the libel, and hence that the defendant's published letter was garbled and bogus, and the court erred in taking from the jury the consideration of this feature of the case and in preventing the plaintiff from referring to the bogus character of the defendant's letter, while leaving the defendant the privilege of referring to the bogus character of the letter of September 17th, which the plaintiff's publication of September 20th stated the plaintiff had received from the Rothschilds.

The differences between the letter sent by defendant to the Rothschilds and that represented in the libel to have been sent are: first, the former was dated September 19th, while the latter was dated September 20th; second, the former contained the following words, which were omitted from the latter, "Have they any of your goods? Have they ever had? If this is a fake, pure and simple, will you send a letter for publication by first mail. Hurry."

The two letters are the same in all essential features; both refer to the letter published by plaintiff on September 20th, and alleged to have been received by it from Rothschilds, and both ask if it is a fake or if it is genuine. The letter as published is a part of the libel complained of. It was this the public saw, and it was this which did the damage to the plaintiff. The letter actually sent was not seen by the public, and if the words therein contained were more libelous or hurtful than the letter as published, the plaintiff has no right to complain and certainly no right to recover therefor in this action, for that letter is not averred to have damaged the plaintiff, but the letter *purporting* to have been sent is the basis of the plaintiff's complaint on this branch of the case.

But aside from that there is no essential difference between the two. The words contained in the letter actually sent and omitted from the letter published, do not make the one sent more libelous nor the one published less so. They both referred to the letter the plaintiff represented it had received from Rothschilds, and asked if it was a fake or genuine. The letter sent also asked if the plaintiff had or ever had any of the Rothschild's goods, which the letter published omitted. But this by itself, or in connection with the other parts of the letter, added nothing to its force or to its libelous character. The request, in the letter sent, for a letter from Rothschilds to publish if the letter referred to by the

plaintiff was a fake, and which was omitted from the letter published, falls within the same criticism.

Therefore, as a matter of practice and of technicality, the trial court properly told the jury that they should confine themselves to the letter published, and as a matter of true law the plaintiff can not be heard to say it was damaged by something that never was published, and even if it could in this case there was nothing of difference between the two letters upon which to predicate a libel suit or to hinge complaint of error in the ruling of the trial court, whether it gave or refused such an .instruction, as is here complained of. ' It is true as stated by plaintiff, that "it is error for the court in its instructions to mistake the issues as raised by the pleadings, but the plaintiff's complaint here is that the court confined it to the issues raised by the pleadings. It is an error to say the court took any part of the libel from the consideration of the jury. On the contrary, the first instruction given for the plaintiff told the jury that they must consider the libel in its whole scope and effect and object, as gathered from the reading and consideration of the whole thereof and the facts and circumstances in connection therewith. The alleged error of the trial court was in directing the jury to enlarge the libel or the issues in the case, by considering something that was never published or pleaded. The court committed no error in this regard.

It is next insisted that the defendant's second instruction is erroneous. That instruction told the jury that it was not necessary to find that the plaintiff's advertisement of September 20th, was false in each and every particular and fact, but if the jury believed that in any portion thereof there was an intention to deceive the public and misrepresent the facts, then although the jury believed other portions thereof were true, still the defendant's attack thereon when considered as a whole was justifiable.

It is admitted by the plaintiff, as it is also shown by the evidence, that the plaintiff did not receive from Rothschilds any letter in manner, form and date such as it published in its advertisement of September 20th, but that such letter is a compression into one of the two letters of September 11th and September 16th, respectively, received by plaintiff from Rothschilds. The letter of September 11th constitutes the bulk of the letter published, but the published letter differs from that of the eleventh in that it states that the Rothschilds will allow plaintiff's claim (of ten per cent discount) when the bill is paid, whereas the letter of September 11th did not allow that claim, but was a counter proposition to allow five per cent discount to avoid trouble. But on the fourteenth of September the plaintiff refused to take the five per cent and insisted upon its first demand for ten per cent discount, and the Rothschilds' letter of September 16th conceded plaintiff's demand for ten per cent. So that on September 20th, when the plaintiff's advertisement was published, it was true that the plaintiff had set up a breach of contract and demanded a ten per cent discount, and that the Rothschilds while not exactly conceding the breach yet to avoid difficulty had agreed to allow the ten per cent discount. It is therefore true that the plaintiff had never received any such letter as that it published, but it is also true that the facts in the purported letter correctly represented the status of the affair at the date of the plaintiff's publication. The proposition about the twenty-five per cent discount and the thirty-three-and-a-third per cent discount, and the sale of the account to plaintiff in fact but ostensibly to the bank, which are referred to in the defendant's advertisement of the twenty-seventh of September, all took place after the plaintiff's advertisement and before the defendant's advertisement. Practically therefore there was nothing untrue in the plaintiff's advertisement, and nothing untrue in the defendant's. The whole case was before the jury, and they

found the only sensible verdict in the case. The plaintiff proved no actual damages and claimed no exemplary damages, and therefore was entitled to none. [Laws 1895, p. 168.] The court properly instructed the jury, and erroneously permitted the plaintiff's counsel to read law books to the jury (Heller v. Pulitzer Pub. Co., 153 Mo. 205), and the jury evidently took the view that the plaintiff had not been damaged but that it is a case where two business rivals have seized upon a trifle and used it as an excuse for advertising their business under the mistaken idea that the people are influenced by such things. The publications of both parties in this case are a very poor compliment to the intelligence and discrimination of the American people, and the jury treated the case as it deserved. The judgment of the circuit court is affirmed. All concur.