JOHN McWILLIAMS, Appellant, v. WORKERS PRINTING COMPANY et al., Respondents.

St. Louis Court of Appeals.    Argued and Submitted February 4, 1915.    Opinion Filed March 2, 1915.

1. **APPELLATE PRACTICE: Review of Matters of Exception: Necessity of Filing Motion for New Trial** On appeal by plaintiff from an order setting aside a verdict for plaintiff on certain counts of the petition and awarding defendant a new trial as to such counts, the action of the trial court in sustaining a demurrer to the evidence as to other counts is not reviewable, unless plaintiff filed a motion for a new trial setting up such ruling as a ground for relief.

2. **LIBEL AND SLANDER: Pleading: Function of Innuendo.** The innuendo in a petition, in an action for libel, may not introduce new matter nor enlarge the natural meaning of the words claimed to be defamatory.

3. **————: What Constitutes Libel: Necessity of Defamation being Malicious.** The mere tendency of a publication to provoke a person to wrath does not make it libelous, unless it is malicious, since Sec. 4181, R. S. 1909, defines libel to be "the *malicious* defamation of a person, made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse."

4. **APPELLATE PRACTICE: Arrest of Judgment: Scope of Review.** The appellate court, in reviewing an order sustaining defendant's motion in arrest of judgment, will consider only whether the petition on its face states a cause entitling plaintiff to a judgment, if verdict was returned in his favor.

5. **LIBEL AND SLANDER: Libelous Statements: Pleading: Sufficiency of Petition.** The petition, in an action for the alleged libelous publication of an article concerning plaintiff, who was a prosecuting attorney, alleged the publication by defendants of a newspaper article which charged that the "printing de-

partment" were grafting with respect to the county printing, and contained a proposed petition to the county judges and the prosecuting attorney that greater economy be practiced, and in another court alleged the publication by defendants of a subsequent article, stating that the people had been disappointed at the prosecuting attorney's failure to investigate the graft charges. The innuendo averred that the prosecuting attorney was included in the charge of grafting. *Held*, that the publication was not actionable *per se*, since it clearly did not charge plaintiff with participating in the grafting, but merely expressed disappointment because of his failure to investigate, and that the scope of the publication could not be extended by the innuendo, and hence it is *held* that the petition did not state a cause of action, in view of Sec. 4181, R. S. 1909, since it did not allege that there was a *malicious* defamation.

6. ————: **Province of Court and Jury: Right of Court to Arrest Judgment.** Under Sec. 14, Art. II, of the Constitution, which provides that, in all suits for libel, the jury, under the direction of the court, shall determine the law and the fact, the court may sustain a motion in arrest of judgment, if a verdict be returned for plaintiff, where the petition wholly fails to state facts sufficient to constitute a cause of action against defendant.

Appeal from Scott Circuit Court.—*Hon. James Finch,* Judge.

AFFIRMED.

*Ward & Collins* for appellant.

The petition stated a cause of action against the defendant and the court erred in sustaining the motion in arrest of judgment as to the first and second count. Sec. 14, Art. 2, Constitution of Mo. 1875; Secs. 1837, 4818, R. S. of Mo. 1909; Cook v. Pub. Co., 241 Mo. 326; Orchard v. Globe Printing Co., 240 Mo. 575; Sotham v. Drover Tel. Co., 239 Mo. 606; Julian v. Kansas City Star, 209 Mo. 35; Morris v. Sailor, 154 Mo. App. 305; Midland Pub. Co. v. Implement Trade Journal, 108 Mo. App. 223; Nelson v. Musgrave, 10 Mo. 648; McMurray v. Martin, 26 Mo. App. 437; Minton v. Bradstreet Co., 174 Mo. 444; McGinnis v. Geo. Knapp & Co., 109 Mo.

131; Farley v. Evening Chronicle, 113 Mo. App. 216; Manget v. O'Neal, 51 Mo. App. 35; Lally v. Cantwell, 30 Mo. App. 524; Noeninger v. Vogt, 88 Mo. 589; Mitchell v. Bradstreet Co., 116 Mo. 226; Bray v. Callahan, 155 Mo. 43.

*Wilson Cramer* for respondents.

REYNOLDS, P. J.—This is an action for libel, brought by plaintiff against a newspaper and its owner or publisher, who are made defendants. The petition upon which the case went to trial was composed of four counts. At the close of plaintiff's evidence defendants demurred to the sufficiency of the evidence under the third and fourth counts. The demurrers were sustained, plaintiff excepting, but as plaintiff interposed no motion for a new trial challenging this action of the trial court, notwithstanding which counsel in their printed argument now attempt to challenge it, these two counts and the action of the court on them are not before us. At the conclusion of all the testimony, and with the first and second counts only before the jury, there was a verdict in favor of plaintiff on each count in the sum of $500. Defendants in due time filed their motion for a new trial as also a motion in arrest. The motion for new trial was overruled, defendants excepting, but the motion in arrest was sustained, plaintiff excepting and filing a motion for a rehearing on the action of the court in sustaining the motion in arrest. This was overruled, plaintiff again excepting, and from the action of the court in refusing to set aside the order sustaining the motion in arrest of judgment, plaintiff has appealed to this court.

The matter covered by the first count of the petition and claimed to be libelous is as follows:

## "TAX-PAYERS, WAKE UP!

"What public sentiment has done nationally, it can do locally. Two weeks ago I sent a letter to the prosecuting attorney exposing the graft in the printing department of the public service. It showed that since our officials went into the newspaper business seventy-five per cent—or three dollars out of every four—paid out for printing was graft. I spoke only of printing because I knew what I was talking about. I do not know what is going on in the other departments. But I do know about printing.

"Now, if it is true, as I know it to be—and it is not denied—that there is such stupendous graft in the printing department is there any reason to doubt that similar graft exists in other departments? And if it is true, as I believe, that similar graft exists in other departments, is it not clear that an honest administration would result in a reduction of taxes at least half?

"Just after my article appeared quite a number of farmers met at Morley. Among other things they decided to do was to circulate petitions among the people asking the county court and all officials to obey the law. Is it not a little strange that officials who have sworn to obey the law should be asked by petition to comply with their oath of office?

"But that is the situation in Scott county. And petitions will be in circulation among you to be presented at the August term of court. So that you may know the nature of this petition it is here reproduced:

"To the Judges of the Scott County, Missouri, Court, the Clerk thereof, and the Prosecuting Attorney: We, the voters and tax-payers of Scott county, respectfully request that greater economy be practiced in the conduct of public affairs to the end that taxes may be lightened. Among other things it has been charged, and not successfully contradicted, that gross extravagance has been practiced in the matter of public

printing, in violation of section 588, which provides that 'officers shall accept of the most advantageous terms that can be obtained,' and we insist that all officials comply with this and all other laws calculated to safeguard the interests of tax-payers.

"If you are interested, cut out the petition printed above, paste it on a sheet of paper, have your neighbors sign below, and mail it to the *Kicker*. No matter if it is not 'all up in style.' They will understand.

"Can any citizen who favors honest government refuse to sign such a petition as this? All that is asked is that your alleged servants comply with the law."

The subject-matter of the second count is as follows:

"The people of the county were a little disappointed last week at the complete silence of Prosecuting Attorney McWilliams concerning the graft exposure in the *Kicker*. He will go to any part of the county to put behind the bars some poor devil who steals a ham. Why doesn't he go after the fellows here at home who take the whole hog? John is a 'good' man, hence I am anxious to see him attempt to prosecute violaters of the law who are not poor and helpless."

"Kicker" is the name of defendant's paper.

It is set out in the petition that plaintiff is an attorney at law and at the time of the publication was the prosecuting attorney of Scott county, and at great length and by way of innuendo, plaintiff avers that these publications referred to him in his capacity as prosecuting attorney. It is true that he alleges that he was also a practicing attorney and that the injury to him was to his professional capacity apart from his official capacity but it is very clear that if the matter claimed to be libelous applies to him at all, it is in his capacity as prosecuting attorney of the county. It may be further said that it is very doubtful whether plaintiff can unite in the same

count damages to him in his character as an attorney at law and as prosecuting attorney. That we do not decide. It is so clear, however, that these articles, in as far as they may be said to refer to plaintiff at all, do so in his capacity as a public officer, that we choose to treat the personal feature as surplusage. By way of innuendo it is averred that it is meant and insinuated and charged by these articles that the county officials of Scott county and particularly plaintiff were grafting and stealing the county funds concerning the county printing and that such grafting and theft was exposed by defendants and made known to plaintiff; that all of the officials of Scott county, and particularly plaintiff, were law breakers, guilty of wicked and corrupt perjury in taking their oaths of office. In the first count it is stated that the publication ''then and there and still does greatly tend to provoke him (plaintiff) to wrath and to expose him to public hatred, contempt, ridicule, scorn, disgrace and humiliation in that said publication charged that plaintiff had failed to comply with the law in violation of his oath of office; that he is guilty of willful and corrupt perjury; that he is guilty of divers misdemeanors in his official capacity, subjecting him to fine or imprisonment or both, to impeachment in office, and forfeiture of office; with gross extravagance, recklessness and carelessness of affairs of business and trust confided and reposed in him and of graft and theft, and that said publication also deprives him of the benefits of public confidence and social intercourse and deprives him of faith and confidence in his honesty by his fellow men, and that said article and publication was willfully, wantonly and maliciously published and circulated among a great number of persons in Scott county and other counties in the State of Missouri, and to some extent in adjoining States, to the great damage of plaintiff in the sum of $2000.''

The charging part of the second count is of the same tenor.

Treating of the office of the innuendo, an accepted authority (Odgers on Libel & Slander [4 Ed.]), commencing at page 110, has said (page 111): "But an innuendo may not introduce new matter, or enlarge the natural meaning of words. It must not put upon the defendant's words a construction which they will not bear. It cannot alter or extend the sense of the words, or make that certain which is in fact uncertain. . . . If the words are incapable of the meaning ascribed to them by the innuendo, and are prima facie not actionable, the judge at the trial will stop the case."

In Diener v. Star-Chronicle Publishing Co., 230 Mo. 613, 132 S. W. 1143, our Supreme Court has held (l. c. 620 and following) that a demurrer lies to a petition sounding in tort for libel the same as to any other petition, if certain conditions are present; if the words used are not actionable *per se* and the pleader, claiming they bear a hidden or latent libelous meaning because of certain extrinsic circumstances sets such extrinsic circumstances forth by way of inducement and follows up the libelous words by an innuendo applying the words to the matter so pleaded by way of inducement, "in such case, such innuendo should not be a forced and unnatural construction and application of the words, but a reasonable and natural construction and application of them. A vice of that sort can be reached by demurrer, and is for the court. Again, if the words of the libel are ambiguous and the pleader can only put a libelous tang or edge upon them by a wholly unnatural and forced construction and tries to do so by an innuendo, that vice can be reached by demurrer, and is for the court."

It is further held in Diener v. Publishing Co., supra (l. c. 624), that a party cannot support a charge of libel by showing that the same publication libelled

another; that to make a case, the publication must be libelous as to the plaintiff, not to another; that the malice supporting the charge must flow from defendant to plaintiff and be personal to him alone and not another. It is also held in the same case and page that if the criticism of the defendants was fair and reasonable and in reference to a matter of public concern, and the plaintiffs are not attacked either in their private or business reputation, then it constitutes no libel because not defamatory, citing Odgers on Libel, 39, 268; Newell on Libel, 324.

It will be observed that in neither of these counts is there any charge that the matter complained of is libelous within the meaning of the law. The first count alleges, in substance, "that the said publication then and there and still does greatly tend to provoke him (plaintiff) to wrath and to expose him to public hatred, contempt, ridicule, scorn, disgrace and humiliation;" and in the second count the substance of the charge is that the "publication then and there did and still does tend to provoke him to wrath and expose him to public hatred, contempt and ridicule and also to deprive him of the benefits of public confidence and social intercourse." The mere tendency of a publication to provoke a person to wrath does not make it libelous. Our statute (section 4181, Revised Statutes 1909) defines libel to be "the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse."

Our Supreme Court in Diener v. Star-Chronicle Publishing Co., 232 Mo. 416, 135 S. W. 6, has said (l. c. 433): "Finally, it is argued that the tendency of the publication was to expose plaintiff to public hatred, contempt or ridicule, or to deprive him of the

benefits of public confidence and social intercourse. . . . But he who thinks that an article merely having that tendency is either a civil or a criminal libel, has studied the law of libel to little purpose. The controlling words in that section are 'malicious defamation' by means of printing and writing, etc., tending to provoke him to wrath or expose him, etc. There must be defamation in a libelous sense before there can be a libel. Otherwise, alarming results would follow. . . . To make a libel there must be defamation in the sense of the law before the public scorn and contempt feature is operative. Defamation includes the idea of calumny, aspersion by lying—the injury of another's reputation in that way. To defame is to speak evil of one maliciously, to dishonor, to render infamous. Whether the words of the publication could reasonably bear such interpretation was a question of law." In Orchard v. Globe Printing Co., 240 Mo. 575, 144 S. W. 812, this is substantially repeated (1. c. 589), our Supreme Court saying: "There must be 'malicious defamation,' that is, the injury of another's reputation by a slanderous communication, detraction, calumny, aspersion."

Naturally in passing on the motion in arrest of judgment, we are not looking to the evidence. Whether it supports the allegations of the petition is a matter to be tested by a motion for a new trial, not by one in arrest of judgment. In passing on the latter we are to consider the action of the court in sustaining this motion in arrest solely upon the face of the petition itself and to determine whether it makes out, on paper, a case entitling plaintiff to a verdict and judgment, if verdict went in his favor.

It is to be said of the first count of the petition that it is not averred that the publication was made maliciously. Counsel for appellant contends that the words used are actionable *per se,* and needed no averment of malice. We find no words in these pub-

lications which are of that class.  It is true that it is set out in the article that referring to a letter previously written the author had sent a letter to plaintiff as prosecuting attorney ''exposing graft in the printing department of the public service.  It showed that since our officials went into the newspaper business seventy-five per cent—or three dollars out of every four—paid for printing was graft.''  It is true the innuendo avers that this charge included plaintiff and charged him with graft.  That is far from being the natural meaning of the words.  We know that the prosecuting attorney of a county is not in any way connected with the ''printing department of the public service.''  Obviously it did not include plaintiff, for the letter was addressed to him, calling his attention to graft by others.  We think that what is said by our Supreme Court in Diener v. Star-Chronicle Publishing Co., 232 Mo. 416, and in Orchard v. Globe Printing Co., supra, covers this; that is, there must be malicious defamation in a libelous sense, and we find none here.

When we examine the matter set out in the second count of the petition, we fail to see that it makes any charge of any actionable publication, and the matter set out cannot be said to be libelous, on any proper construction which can be given it.

That the position taken by counsel for respondents in challenging the verdict by motion in arrest of judgment, was proper action, is clear from what is determined by our Supreme Court in Heller v. Pulitzer Publishing Co., 153 Mo. 205, 54 S. W. 457.  In that case what is commonly called Fox's Libel Act is quoted and English decisions under it cited and quoted. After remarking that this English statute applied exclusively to criminal cases, the court has said that our Constitution, in fewer words has substantially adopted that act, extending it, however, to all suits and prose-

188MA33

cutions for libel, thus applying it to civil as well as criminal cases. It is then held, applying the decisions under Fox's Act to the like provision under our Constitution (l. c. 213), that "in the first instance, upon demurrer or plea interposed by the defendant, the court decides the question of libel or no libel. If the decision is for the defendant, the matter ends as to that court, but if it is against the defendant, the case must go to the jury upon the question of libel or no libel, the court directing the jury as to the general principles of law touching libel, but the jury are at liberty to follow the directions or not, and if the jury find for the defendant, the case ends there as to that court, but if the jury find against the defendant, a motion in arrest by the defendant will lie in the same manner it would have done before the passage of the Act." Our Supreme Court has further said in that case (l. c. 214): "In all other respects pertaining to a trial, except as to the question of libel or no libel, the power of the court is the same in a libel suit as in any other kind of a case." In Branch v. George Knapp & Co., Publishers, 222 Mo. 580, 121 S. W. 93, this doctrine was reiterated, the court saying (l. c. 596): "This court has settled that the constitutional provision respecting libel suits does not divest the judge of his duty to determine the matters of law arising in the case, just as in any other case."

Our conclusion upon the whole case is that the action of the circuit court in sustaining the motion in arrest of judgment on the ground that these first and second counts of the petition fail to state a cause of action is correct. That judgment is affirmed. *Nortoni* and *Allen, JJ.,* concur.